MAHON, Executrix, *et al., v.* THE NEW YORK CENTRAL RAILROAD COMPANY.*

Where land has been taken for a turnpike, and afterwards transferred, by legislative authority, to a railroad company, without compensation by the latter to the owner of the fee, he may maintain successive actions for damages resulting from such occupation, as a continuing nuisance.

The use of the land for a railroad is totally different from that public right of passage for which highways were designed.

ACTION for damages from the construction by the Utica and Schenectady Railroad Company (to whose rights and liabilities the defendant had succeeded), of an embankment in front of two houses of John Mahon, the plaintiffs' testator, in the village of Herkimer, and partly on the lands of said Mahon, by which he was deprived of the use of the highway called the Mohawk turnpike, which ran immediately in front of the dwelling-houses, and by reason of which the houses and lots aforesaid were frequently inundated and the dwellings rendered damp. Damages were also claimed for the construction and operation of a railroad upon the land of the testator, extending to the middle of the highway in front of his dwellings, without purchasing the land or causing the testator's damages to be

---

* Decided at March Term, 1860.

assessed. One of the defences was, that, in July, 1842, John Mahon, the plaintiffs' testator, commenced an action in the Supreme Court for the same causes of action as those stated in the complaint in this suit. The action thus pleaded in bar is the same reported in Lalor's Supp., 156. Upon the trial, the plaintiffs proved title in their testator by deed dated April 22, 1830, to half an acre of land, the northerly line of which is therein described as "running along the turnpike-road six rods;" and that, from the date of said deed, which was before the construction of the railroad, until his death, John Mahon continued in possession. The turnpike was north of Mahon's land, and its grade was two and a half feet lower than the lots. In 1836, the Utica and Schenectady Railroad Company, in pursuance of an act of the legislature requiring it to do so, purchased all the rights of the Mohawk Turnpike Company, which was incorporated April 4, 1800. In constructing the railroad along the turnpike, an embankment was made, raising the grade two and a half feet higher than the lots of Mahon, and a single track was laid upon it. It was for this occupation of the land that the action pleaded in bar by the defendant was instituted. Subsequently, in 1847, the embankment was widened so as to approach nearly to Mahon's dwellings, its height increased, and an additional track was laid thereon. Before the widening of the embankment, there was room for the passage of carriages between the same and Mahon's fence; but after the laying of the second track, this was impossible. The plaintiff was nonsuited at the trial; and the judgment in favor of the defendant having been affirmed at a general term in the fifth district, the plaintiffs appealed to this court.

*Robert Earl,* for the appellants.

*John H. Reynolds,* for the respondent.

CLERKE, J. If the plaintiffs' testator could have recovered all that he was entitled to in the first action, it is, of course, a bar to the second. And this depends, chiefly, though not altogether, upon the question whether the Utica and Schenec-

tady Railroad Company in any way transcended the authority constitutionally vested in them by the legislature. If they did, their road is a nuisance—a perpetual nuisance; and every day's continuance of it is a legal wrong, for which they are liable in damages after they have accrued. If they did not transcend their authority, and yet, in constructing their road, have necessarily injured the rights of others, they are equally liable to respond for prospective as well as accrued damages; and, in such case, they cannot be vexed again in a second action.

Did the Utica and Schenectady Railroad Company transcend the authority constitutionally vested in them by the legislature? If the plaintiffs' testator owned the fee of the land over which the Turnpike Company's road ran, at the time of the transfer of the road to the Utica and Schenectady Railroad Company, it could not be taken away from him without causing his damages to be assessed and paid; and the illegal appropriation of it would make them liable for damages in successive actions as the damages accrued. It seems to be admitted that no such damages were assessed or paid.

The rule that owners of land bounded on public highways *prima facie* own the land to the centre of the highway is not alone applicable to ordinary highways, but also to turnpikes (*Hooker* v. *The Utica and Minden Turnpike Co.*, 12 Wend., 371); and although the general act relating to turnpike companies passed March 13, 1807, declares, when the president and directors pay the owners of the lands the sums assessed and awarded by the appraisers in their inquisition, they shall have and hold to them, and their successors and assigns forever, the lands and tenements described in their inquisition; yet it has been always held that this and the special act of incorporation vests in the company the title to the lands over which the road passes only for the purposes of the road, and, when the road is abandoned, the land reverts to the original owners. The company only acquired such an estate in the land taken by it as was necessary to fulfill the end and intent of the corporation, and could hold it to no other use, intent or

purpose. Having ceased to occupy the land in question. for the purpose of a turnpike road, the Mohawk Turnpike Company, in transferring it, in effect abandoned it; and, although they were authorized by the legislature to transfer it to the Utica and Schenectady Railroad Company, this could not, constitutionally, deprive the original owners of the land of their right of reversion, without compensation. (*Davis* v. *The Mayor, &c., of New York,* 14 N. Y., 526; *Williams* v. *The N. Y. C. R. R. Co.,* 16 id., 97.) An easement for the purpose of a highway does not authorize, as against the proprietor of the soil, the laying down of a railroad upon the track of the highway. The use of the land for a railroad is totally different from that public right of passage for which highways were designed.

The Railroad Company, therefore, having, without compensation to those entitled to the reversion of the land, constructed, maintained and operated their road upon the highway in question, acted and continued to act unlawfully, and are liable to damages from time to time as they accrued; and, on this ground, the second action is maintainable.

The learned judge then discussed another ground on which he thought the action maintainable, notwithstanding Mahon's recovery in a previous suit, viz., the enlargement and raising of the embankment in 1847 was a new injury for which compensation could not have been recovered in the first action.

WRIGHT, J., was for reversal, on the ground last stated; but SELDEN, DENIO, DAVIES and WELLES, Js., without passing upon that question, were for reversal on the ground first stated, that the appropriation of the land for a turnpike did not authorize its use for a railroad. COMSTOCK, Ch. J., and BACON, J., did not sit in the case.

Judgment reversed, and new trial ordered.