[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 425 
This is the second appeal in this action. The first was by one Williams, then plaintiff, from a judgment dismissing the complaint, rendered by the Special Term of the Supreme Court, after a trial of the issues, and an affirmance of the judgment by the General Term. The present plaintiff are the representatives of Williams, and stand in his place. So far as the facts bear upon the cause of action, they are not different from those established on the former trial, and by reason of which this court held that *Page 427 
the plaintiff was entitled to recover. The learned counsel for the appellant criticises the conclusion then reached, but the principle which lay at the bottom of that decision, and was then asserted, has since been so often reaffirmed as to make a renewed examination of the questions unnecessary. (Mahon v. N.Y.C.R.R.Co., 24 N.Y., 658; Carpenter v. O. and S.R. Co.,
24 id., 655; Milhau v. Sharp, 27 id., 611; Craig v. Rochester Cityand B.R.R. Co., 39 id., 404; Rochester Gas Light Co. v.Calkins, 62 id., 386.)
Upon the first appeal the attention of the court was directed, as it is now, to the plaintiffs' claim for damages accruing to the sold, as well as to the unsold portions of the premises, and while a doubt was suggested as to their right to recover in this suit damages upon the lots which had been sold, because to do so, would in effect deprive the defendant of a right to have them assessed by a jury, that question was not considered, for it was not raised. It has not been raised upon this appeal, nor was any objection made upon that ground before the referee; we are not therefore embarrassed by it, and have only to determine, whether any error was committed by the court below in regard to the measure of relief to which the plaintiffs were entitled. To maintain that there was error in this particular, was the chief contention of the learned and ingenious counsel for the appellant, to whose researches we are indebted for all the authorities bearing upon his position, and they have been applied by him with great persuasiveness. Yet in view of the nature of the suit and the facts found by the referee, we cannot yield to the conclusions urged in support of this appeal. The suit is in equity. The complaint alleges the plaintiffs' ownership of certain lands extending to the centre of Washington street; an unauthorized entry upon them by the defendant, the cutting down of the street to a lower grade; making embankments from one to three or four feet high upon the sides of the street; the occupation of it by permanently laying down and constructing a railroad track "for the permanent objects of their business," the reduction in *Page 428 
value of the plaintiffs' lots lying along this street, the actual depreciation in market value of his land, and the sales thereof at the reduced price; injury to other abutting lots, and to the strip or street, part of his land, actually occupied by the defendant.
The relief sought is: First, damages. Second, an abatement of the use of the railroad, and a removal of the track. Third, an injunction against the running of trains, or if the defendants are permitted to use the track to do so "only on condition that the plaintiff shall first be paid his damages." The allegations of the complaint so far as they relate to the conduct of the defendant and its acts are not denied, and upon the trial it was admitted that the defendant's road was located on the premises in question. Evidence was given in regard to the depreciation of the plaintiffs' property in consequence of the defendant's acts above referred to. The referee found upon sufficient evidence the excavation and grading of the street for railroad purposes, changing the former grade one foot, and in some places more than one foot; that the railroad was located, and the track placed with a view to the permanent occupation of the premises during the defendant's corporate life; that prior to its location the plaintiff was a large owner of vacant land, and desiring to bring it into market laid it out into lots and in furtherance of his object dedicated the strip of land (now traversed by the railroad) for a street or highway. His lots extended to the center of the street, and the referee finds "that by reason of the construction and use of the railroad, Williams sustained damage, in the impaired value of his land, and of the rents and profits thereof." That other lots also extending to the center of the street were sold and conveyed by him before the commencement of the action, he reserving "any claim he might have against the defendant for damages in respect to such lands, occasioned by the location, construction, and use of the railroad;" and before such sales were made he sustained damages by reason of the depreciation of the value of the lands from the cause above *Page 429 
mentioned. The referee also finds, that the construction and use of the railroad have rendered the lots fronting on the street more inconvenient, and less useful for the residence of families than they would be if the railroad was elsewhere located, and have depreciated and reduced the value of all the lands of Williams referred to in the complaint. The amount of the depreciation is stated and the allowance of this item, and the admission of evidence relating to it, presents one of the principal questions before us. The other arises upon the conclusion of the referee that if the plaintiffs shall within a time limited, tender to the defendant a conveyance of all the interest which Williams at the time of his death had in the land lying in front of the lots above referred to, and on which the defendant's road is located, and "release the defendant from all claim from damages arising from the location, construction and use of its railroad in said street (except the damages above referred to) then the defendant shall pay the plaintiffs the further sum of $4,339.43, and interest from the date of the report, or in default of such payment the defendant shall be enjoined from using said railroad upon the land in front of the lots specified."
As to the question last stated the case is plainly for the plaintiffs. Equitable relief is awarded, not as the defendant's counsel claims by way of menace, or as a means of compelling the payment of money, but that the defendant may desist from the unauthorized use of the plaintiffs' property, and forbear from any further interference with their rights. To hold otherwise would leave the citizen remedies against the power of a corporation to acquire and use property without compensation, and to prevent that, the court ought not to be reluctant to exercise its jurisdiction. The facts in this case show that the entry upon the land in question was under the belief that the right to do so had been obtained, but it was not so, and the decree in this particular is just. The defendant is not required to pay the money. It may submit to the injunction. Nor did the referee exceed his jurisdiction *Page 430 
in awarding it. All the issues in the action were referred to him to try and determine, and it was his duty to award the proper judgment. In the exercise of its equitable jurisdiction the court, or referee acting in its place, may give full relief, having regard to the rights and interests of both parties. It has done so in this case. In view of the annoyance and expense incident to the stoppage of the defendant's trains, it was just to open the doors of escape, and permit the defendant at once to acquire title to the land occupied, and thus avoid the delay incident to other proceedings for that purpose, but it was, notwithstanding, optional with the defendant to comply with the conditions. The plaintiffs could not require it, but they would be bound by the judgment, and the defendant become on performing the condition, purchaser of the land with rights not inferior to those obtained by appraisement and payment of damages under the statute (Wood v. Auburn and Rochester R.R. Co., 8 N.Y., 160.) But the decision of this court upon the former appeal (Williams
v. N.Y.C.R.R. Co., 16 N.Y., 97) established the plaintiff's right to an injunction, and nothing need be added upon this point.
As to the other question it was also then held that the right of the plaintiff to come into a court of equity, rested upon the fact that the trespass complained of was of a continuous nature, and that he might invoke its restraining power to prevent a multiplicity of suits, and could of course recover his damages as incidental to this equitable relief. It would seem therefore that the plaintiff should recover in this action all his damages, for if not, then the apprehended evil would not be averted, and the defendant would be subjected to fresh litigation from day to day, and neither party be better off than if the plaintiff had resorted to the other forum, but as it is, the court has power to do complete justice, and a purpose to render it must have been in the mind of the court upon the first appeal, or its language would have been qualified, and not general. Even the doubt expressed indicates it, for that was founded upon *Page 431 
no quære as to the plaintiff's right to recover all his damages, even "upon the lots which had been sold," but as to the tribunal to assess them. This inference is confirmed by the reference made to this case in that of Milhau v. Sharp
(27 N Y, 625), where the same learned judge who delivered the opinion on the former occasion and speaks of it as one in "which the railroad had been built, and was in use, and in which damages were claimed for past injuries," and in the case itself, while considering the principal question there involved, the learned judge says: "Any one can see that to convert a common highway running over a man's land into a railroad, is to impose an additional burden upon the land, and greatly to impair its value. As no compensation has in this case been made to the owner his consent must in some way be shown. The argument is, he has consented to the laying out of a highway upon his land, ergo,
he has consented to the building of a railroad upon it; although one of these benefits his land, renders access to it easy, andenhances its price, while the other makes access to it both difficult and dangerous, and renders it comparatively valueless." In view of these suggestions, I cannot doubt that the very element of damage, upon which the present judgment rests, was before the court when about to declare the assessment of damages, a right to which the plaintiff was entitled as incidental to the right to equitable relief. It was a substantial discrimination between a direct and permanent injury to the inheritance, such as the one in question, and an occasional obstruction by the passage of trains, or the excess of water thrown by an embankment upon a neighbor's land after a a storm of rain, or from melting snow. It indicates an injury to the property itself, and not one dependent upon the use to which it may from time to time be put. A material injury affecting the value of the land, making it less saleable, and only at a diminished price. But that decision itself was in obedience to an elementary principle under which, when a court assumes jurisdiction in order to prevent a multiplicity of suits, it will proceed to give full *Page 432 
relief, both for the tortious act and the resulting damages. (Exparte Marsh, 1 Mad. Chy. Pr., 149; Ryle v. Haggie, 1 Jac. 
Walk., 233; Francis' Maxims, 42; Lee v. Alston, 1 Ves. Jr., 81.)
McRea v. The London, Brighton and South Coast Railway Co. (37 Law Jour. R. [1868], Eq. p. 267), was not unlike the case before us. At the time of filing the bill the plaintiffs were entitled to an injunction against the railroad company, and damages were awarded at the hearing, although no injunction was in fact obtained, and the plaintiffs interest in the land had meanwhile determined. The railroad had taken possession in good faith, but without making compensation. The chancellor said: "I certainly entertain the impression that on questions of this kind where there is a doubt about the jurisdiction, or whether the court ought to interfere both for the sake of the plaintiff and the defendant, the court ought to stretch, rather than to narrow its jurisdiction, and that finding a question actually raised upon the pleadings which either party has a right to have decided, it ought not to send a plaintiff who has fairly brought that question before the court to pursue his relief elsewhere," and so an inquiry was ordered as to the sum proper to be awarded the plaintiff in respect of the damages for the matters complained of in the bill.
Here the plaintiff has established every allegation, and the items of damage allowed by the referee were fairly claimed by him in his complaint; all his lots had been sold at the time of the trial, and in such a case it would seem that all damages naturally resulting from the wrongful act of the defendant, or directly traceable thereto, might be recovered. Nothing is so clearly established as the item of damage now in question and it was the inevitable result of the defendant's act. The plaintiff's land was, before the defendant entered upon it, subdivided into village lots, and designed for sale; the use of the street was essential, and any interference with it would lessen the value of the lots in the market. Such was the consequence, as found by the *Page 433 
referee, of the construction and use of this railroad. The sales were less productive, and damage fell upon the plaintiff by reason of the depreciation so caused. Neither the character of the property, its location in respect to the street, nor the intentions of the owner in regard to it, can be overlooked; that his earliest intention was to sell; that it was prepared for sale, and sold, must be considered; and that the value was diminished by the direct act of the defendant. If these questions had arisen upon proceedings by the defendant to acquire the right which it has unlawfully taken, they would properly have been answered in favor of the land owner. He would receive an award,first: for the full value of the land taken, and second, a fair and adequate compensation for all the injury he had sustained, or would sustain by the making of the railroad over or across his lots. (Kyle v. A. and Roch. R.R. Co., 2 Barb. Ch., 489.) And it would have been proper to ascertain, and for that purpose determine what effect the change made by the defendant in converting the street into a railroad track, would have upon the plaintiff's land. In Troy and Boston R.R. Co. v. Lee (13 Barb., 169), the court on reviewing a report of commissioners under the railroad act say: "The true rule, the only rule which will do equal justice to all parties is to determine what will be the effect of the proposed change upon the market value of the property. The proper inquiry is, what is it now fairly worth in the market, and what will it be worth after the improvement is made?" following BRONSON, J., In the Matter of Furman Street
(17 Wend., 649). The rule itself is approved in many subsequent cases, and in the Alb. N.R. Co. v. Lansing (16 Barb., 71), it is said: "They" (the commissioners) "were to consider how the taking of the land * * * would effect the residue of the owner's land. Would it leave that residue in an inconvenient unmarketable shape? If so, this fact might properly be taken into the account in determining the amount of compensation. Thus if the land to be taken should lie between the owner's house and the highway, the *Page 434 
amount of compensation should be vastly more than for the same quantity of land, equally valuable in itself, but situated in some remote part of the owner's premises." And it was held that the commissioners were therefore right in including compensation to the adjacent land by reason of such taking.
It is however objected that the plaintiff should have in this action no damages save for the actual trespass up to the time of bringing the action, and should by successive actions have accruing damages, for the maintenance of the railroad, subsequent to the commencement of the action, or only nominal damages for the original trespass until by the action of ejectment he has possession, and that for damages for the depreciation in value above referred to he should wait until the defendant institutes proceedings to acquire title under the statute relating to that matter. If that is so, a court of equity is powerless, the multiplicity of actions not prevented, and a new and altogether useless litigation encouraged for no good purpose. I think the objections not tenable, and discover no reason for denying any relief to which the plaintiff would in any action, or before any tribunal be entitled. The defendant has for the purposes of its incorporation, entered upon an exclusive and permanent occupation of the land; embedded therein its track, and is enjoying it as fully as if the right to do so had been legally secured; in that event compensation must have been made to the owner, and the two things concurring, the title of the defendant would be complete, and the owner legally satisfied. The same result should be reached in this proceeding. The parties are before the court; they have had their day. Those matters have been passed upon which might have gone before commissioners under the statute, and for every trespass, the plaintiff may recover in this action. For that reason only was it entertained. No doubt an action might have been brought for the original trespass, in entering and placing the railroad structures upon the land, and other successive actions for continuing it, for in such a case it is said that recovery of damages in the first action by way of satisfaction for the *Page 435 
wrong, would not operate as a purchase of the right to continue the injury. (Mahon v. N.Y.C.R.R., 24 N.Y., 658.) Yet in that case the facts were different. In the first action (Lalors' Supplement, 156), it was charged that the defendant's embankment obstructed the plaintiff's approach and access to his lands, and house; and so set back the water as to inundate the dwelling-house, etc. The second action was for a similar injury, but in neither was there any suggestion that the land affected was injured in its market value, or in that respect depreciated. The elements were lacking which lie at the foundation of the case at bar. The injuries were temporary and occasional, and for aught that appears the cause might be removed. But even in that case it was held that if the action was sustainable merely upon the ground that the plaintiff was deprived permanently, by the defendant, of the use of the highway, or that the obstructions were necessarily permanent, the plaintiff would be entitled to prospective damages for that deprivation (24 N.Y., 658), as explained in Plate v. N.Y.C.R.R. Co. (37 N.Y., 476). In the case last cited, the difference is indicated between permanent and temporary obstructions. There the land of the plaintiff was flooded as in the Mahon Case, and the court say: "The cause of the injury may be abated, or removed, so that the plaintiff might never again sustain any injury, or from some fortunate change of circumstances the plaintiff's land might never again be flooded."
In the case at bar the injurious consequence was single, the result of one wrongful act, and could not be divided or estimated from day to day; it was not temporary but permanent. The street was practically taken away so far as its uses as a street were concerned, and the injury was direct as affecting the property of the plaintiff (Beckett v. The Midland Railway Co. (L.R. [3 C.P.], 81), and the immediate depreciation of its value. In TheTown of Troy v. The Chesire R.R. Co. (3 Foster [23 N.H.], 83), while it was held that the plaintiff could recover only for the damages which had been sustained at the time of the commencement *Page 436 
of the suit, yet it was considered that all the damages which the plaintiff had sustained, or could sustain, accrued when the defendant's road was built, and that only one recovery could be had; the court in that case say: "Whenever the nuisance is of such a character, that its continuance is necessarily an injury, and when it is of a permanent character that will continue without change from any cause but human labor, then the damage is an original damage, and may be at once fully compensated, since the injured person has no means to compel the individual doing the wrong to apply the labor necessary to remove the cause of injury, and can only cause it to be done, if at all, by the expenditure of his own means," and there are other cases to the same effect. And there are cases to the contrary, some holding under circumstances not unlike those presented in this case, that the measure of damages is not the amount the premises had been lessened in value by the trespass, but the difference in value for their use without the railroad track, and with it, from the date of the trespass to the commencement of the suit. They are however cases at law, and are not to be reconciled. The conflict between them fully justifies the observation of a learned text writer that the whole law on the subject of damages in the case of continuing nuisances or trespasses, is in a very unsatisfactory state (Mayne on Damages, [2d ed.],) 64, but it needs no further discussion here, for even if it would be otherwise in actions at law, I have no doubt the plaintiff's damages however viewed may be assessed in equity, for a measure may be applied according to the jurisdiction of the court. InCorning v. Troy Iron and Nail Co. (39 Barb., 326), the plaintiffs sought an injunction, and damages by reason of the diversion of water. HOGEBOOM, J. says: "It is said an action at law lies to recover the damages. * * * If so such actions may be indefinitely repeated, and each successive day may witness the commencement of a new one. Which is the least burdensome to the defendants, a single action settling the entire right, and affording comprehensive relief, or a succession of *Page 437 
suits involving the defeated party in heavy costs?" (page 326.) He adds: "The resort to an equitable forum make the relief comprehensive, and avoids a multiplicity of suits." In the same case on appeal (40 N.Y., 191), GROVER, J. says: "It may now be assumed as settled, that the plaintiffs can in the same action obtain all the relief to which the facts entitle them, growing out of the diversion of the water, whether such relief was legal or equitable, or both." A further ground, he says: "Requiring the interposition of equity is to avoid multiplicity of actions. If equity refuses its aid, the only remedy of the plaintiff will be to commence suits from day to day," adding "all the relief to which a party is entitled arising from the same transaction, may under the Code be obtained in one suit."
This doctrine is of little practical importance if the power of a court of equity to give damages, when it has acquired jurisdiction, is confined to cases in which the plaintiff could recover damages at law, or if it is to measure them by the same rule. It is not. In Mayne on Damages (p. 465), the learned author speaking of the assessment of damages in the Court of Chancery says: "The damages awarded differ from those which could be obtained at law, in being given by way of compensation for permanent injury once for all, not as at law where successive actions may be brought, and damages recovered toties quoties."
Citing the language of Lord CRANSWORTH in Stokes v. The CityOffices Co. (limited) (13 L.T. [N.S.], 81); and see 2 Story's Eq. Jur. (§ 994). In Watson v. Hunter (5 John. Ch., 169), Chancellor KENT says: "The remedy for waste already committed is merely incidental to the jurisdiction assumed to prevent multiplicity of suits, and to save the party from resorting to trover at law," and citing Jesus College v. Bloom (3 Atk., 262), says: "The ground for coming into chancery was to stay waste, and not for satisfaction for the damages, as the commission of waste was a tort, and the remedy at law, but to prevent multiplicity of suits * * * the court would make a complete decree, and give the injured *Page 438 
party a satisfaction for what had been done, and not put him to an action at law." To the same effect is Smith v. Cooke (3 Atk., 381); Bird v. The W. and M.R.R. Co. (8 Richardson Eq., 46). These views are also sustained by the decision of this court upon the first appeal. After discussing the rights of the respective parties, SELDEN, J. says: "It follows that the defendants in constructing their road upon Washington street without the consent of the plaintiff, and without any appraisal of his damages or compensation to him in any form were guilty of an unwarrantable intrusion, and the trespass upon his property, and he is entitled to relief," and indicating as it seems to me the measure of relief, the learned judge says: "Although he had a remedy at law for the trespass, yet as the trespass was of a continuous nature he had a right to come into a court of equity, and to invoke its restraining power." Why? To prevent a multiplicity of suits, and can of course recover his damages as incidental to this equitable relief. And this general rule is well stated by EARL, J., in a recent case. (Mad. Ave. Bapt.Church v. Bapt. Church in Oliver St., 73 N.Y., 95.) "It is" he says, "the practice of courts of equity where they have once obtained jurisdiction of a case, to administer all the relief which the nature of the case and the facts demand and to bring such relief down to the close of the litigation between the parties." Again the court as one of equity may not only render full compensation to the plaintiff, but may do it on such terms as will secure to the defendant, rights corresponding to those given by the statute as a consequence of proceedings to acquire the right they have wrongfully taken. It has been done in this case. If the defendant complies with the conditions of the judgment, it is protected to the largest extent, in the enjoyment of the roadway, and can be no longer, or in any other action vexed. If it does not accept the conditions and chooses to proceed under the statute, the record of this judgment will prevent the allowance of any damages for injury to the land not actually taken, or for any cause covered by its provisions *Page 439 
(Vedder v. Vedder, 1 Denio, 257), and leave the defendant liable only for those which may be assessed for the roadway.
The judgment should be affirmed, with costs.
All concur, except EARL, J. dissenting.
Judgment affirmed.