IN THE MATTER OF THE APPLICATION OF THE NEW YORK, LACKAWANNA AND WESTERN RAILWAY COMPANY, APPELLANT, TO ACQUIRE REAL ESTATE OF JOHN ARNOT AND OTHERS, RESPONDENTS.

*Eminent domain — taking land for railroad purposes — rule for estimating the damages.*

In appraising the damages to be paid by a railroad company for land taken by it, the true inquiry is, what is the fair marketable value of the whole property; what will be the fair marketable value of the property not taken. The difference is the amount of the damages.

Although one element of valuation in respect to the whole property and in respect to the residue may be, in a proper case, the facility or the difficulty of dividing it into city lots, if it be then valuable for that purpose; yet the mere hopes of an owner that his field may one day be built upon are not to be considered, unless the probability of such an event in the public mind has in fact affected the "fair marketable value" at the time of the proceeding.

*Semble,* that as the appellate court in these cases is to exercise its discretion the ordinary rules of evidence will not be strictly enforced.

APPEAL from the appraisal and report of the commissioners appointed herein, and from an order made at a Special Term confirming the same.

*Robert T. Turner,* for the New York, Lackawanna and Western Railroad Company, appellant.

*Erastus F. Babcock,* for the landowners, respondents.

LEARNED, P. J.:

The defendants are the owners of a field or tract of land nearly square and containing about twenty-six acres. On the south-west corner are the gas-works, taking out from the square a piece about 370 feet by 250 feet; and the rest of the southerly side is bounded by the abandoned Junction canal. The field is generally flat; the south-easterly part, however, being low ground. The railroad company takes for its track a strip ninety-nine feet wide, running diagonally through the field. The center line starts about 270 feet southerly from the north-westerly corner and runs about the same distance northerly from the south-easterly corner. This center line is about

1,250 feet long.    The strip contains about three acres.    The easterly side of the field is bounded by Oak street, the westerly by Madison avenue.    At Oak street, where the railroad crosses, the street is about eighteen inches higher than the lots.    Just within the fence at Oak street, by the petitioner's map (station 3072), the fill is 3.4 feet sub-grade; on which comes the ballast.    It is stated in the brief that the stations are 100 feet apart.    Assuming that to be correct, at a distance of 700 feet along the center line there is a cut of 1.2 feet sub-grade, and the cut becomes deeper farther up to the north-west end of the strip.

This field or tract of land, for the purposes of taxation is, assessed at about $8,000.    The commissioners have awarded for the strip taken by the railroad $17,500.    The estimates of depreciation caused by the construction of the railroad, including the land taken, varied greatly, ranging from about $5,000 to $30,000.    Now this disagreement throws discredit on the value of such testimony.    It is difficult to understand how witnesses, who had any knowledge on the subject and who were competent to give opinions, could vary so widely.    It would be wrong for us to assume that any of these witnesses did not testify honestly.    And it seems, therefore, neces-sary, in order to account for this very great discrepancy, to inquire whether there was not some element improperly brought into the estimate ; some element which diverted the minds of the witnesses from the mere question, " what is the fair marketable value of the whole property, and then what will be the fair marketable value of the property not taken." . (*Troy and Boston R. R.* v. *Lee,* 13 Barb., 169 ; *Black River and M. R. R. Co.* v. *Barnard,* 16 Sup. Ct. N. Y. [9 Hun], 104.)

. If these defendants had owned another tract of land in the neighborhood through which the railroad did not run, we do not know of any principle which would permit the commissioners to take into account the depreciation to that other tract.    (*In re N. Y. C. and H. R. R. R. Co.,* 13 Sup. Ct. N. Y. [6 Hun], 149.)    Unless, perhaps, the neighboring tract should be actually used in connection with that of which a part is taken, so that the two really formed one whole.    The statute does not provide for compensation to be made to owners of land near to which a railroad runs ; but only for compen-sation to those whose land is taken.    ( *Walker* v. *Old Colony and N.*

*R. R.*, 103 Mass., 10.) And it follows, therefore, that those whose land is taken must be compensated only for the damage to the tract which, or a part of which, is taken. Hence it follows that the estimate must consider the tract as a whole, in ascertaining first its fair marketable value as existing, and then the fair marketable value of the residue.

It appears that some twenty years ago, a map of this tract was made, by which it was divided up into lots and streets. But the map was not recorded; the streets were never opened, no lot was ever sold and the tract was used for pasturage. There are some 107 lots in all, through about thirty of which only the railroad passes. And it will be seen, on examining the testimony, that the estimates of value are largely made by putting a value on each of the 107 lots, whether touched by the railroad or not, and estimating how much each is depreciated by the railroad. Now it will readily be seen that this objection arises to this mode of estimate. Let us suppose that one of the lots, not touched by the railroad at all, had previously been sold by these defendants and was at the time of the hearing owned by some other person. Could that person claim damages for the depreciation of his lot? If not, can damages be allowed to these defendants for injury to such a lot *as a distinct lot*, upon the ground that the owners have another lot which is taken?

It seems to us, that this argument shows, that when an owner, a part of whose land is taken, asks damages for that which is taken and for the injury to the residue, his land must be considered as a whole. And that the estimating of the value by dividing it into parcels is not the correct method. It must be distinctly understood that, in saying this, we do not mean that one who expresses an opinion may not consider all the possibilities, including the right and opportunity of the owner to divide and cut up a large tract into lots. But we mean that it is inconsistent for an owner to treat his land as several distinct lots for the purpose of increasing the damages, and yet ask, that all these lots shall be considered as one tract from which the railroad has taken a part.

It is very plain, that to make a map of a tract of land and lay out streets thereon does not add in the least to its value; any more than it would to mark out churches and school-houses on the lots

themselves. The defendants cite *Henderson* v. *New York Central Railroad Company* (78 N. Y., 433), to show that they are entitled to the diminution of value ᴗ of the land considered as city lots. But that case is quite different. Williams had laid out and opened Washington street and had dedicated it to the public and the city had accepted and occupied it. (S. C., *sub. nom. Williams* v. *N. Y. C. R. R. Co.*, 16 N. Y., 97.) The city permitted the railroad to lay its track in the street, without the consent of Williams. And it was held that he was entitled to recover for the damages in appropriating the street and injuring his adjacent land, every lot of which extended to the center of the street. Williams had in fact sold the lots, reserving his right of action. No question, such as is above stated, is discussed in that case; but the principle is recognized that the estimate should be what will be the effect of the proposed change on the market value of the property. (*Troy and Boston R. R. Co.* v. *Lee, ut supra.*)

It may be that a railroad passing diagonally through a tract will injure it more than it would if it passed through at right angles. And, far from denying, we affirm the rule of estimate in *Black River and Mohawk Railroad Company* v. *Barnard* (*ut supra*). And see *Presbrey* v. *Old Colony and N. Railroad Company* (103 Mass., 1). One element of valuation in respect to the whole property, and in respect to the residue, may be, in a proper case, the facility or the difficulty of division; if the land is, at the time, valuable for city lots. But the mere hopes of an owner that his field may one day be built upon, are not to be considered; unless the probability of such an event, in the public mind, has in fact affected the "fair marketable value," at the time of the proceeding.

There is another erroneous method which has been followed in these proceedings. The inquiries of witnesses have been like this: "What is the compensation which ought to be made for the appropriation of this land, including the depreciation to such of it as is not taken?" This mode really puts the witness in the place of the commissioner. He might as well be asked, how much ought the commission to allow the owner. A witness testified that he estimated the land taken, estimating by lots, at $13,100, and he estimated $12,300 as the depreciation of land not taken. On what he based that estimate of depreciation does not appear. The true

inquiry (as only a part of the defendant's land was taken) is that above pointed out: what is the fair marketable value of the whole; what is the fair marketable value of the property not taken? If the questions had been limited with some strictness to those points, there would not perhaps have been the extraordinary variance of estimates. Statements of opinion are uncertain enough at the best. They ought to be kept in rather strict limits; to estimates of values, not to guesses at depreciation. (*Walker* v. *Old Colony and N. R. R. Co.*, 103 Mass., 10.)

Some points are made as to exclusion and admission of evidence. As we have said in another case at this term, we do not think that the ordinary rules of evidence are to be strictly applied on our review, since we are to exercise a discretion. Still we think that the commissioners should have permitted an inquiry as to the cost of other lands as to which testimony had been given, by way of comparison. There was no objection that the purchase was not recent. (*Hoffman* v. *Conner*, 76 N. Y., 121.)

Some other questions are raised which we think it not necessary to examine. Upon a consideration of the whole evidence in the light of the matters above discussed, we conclude in our discretion to set aside the award and to direct a new appraisal by other commissioners.

Present — LEARNED, P. J., BOARDMAN and LANDON, JJ.

Award set aside, and new appraisal ordered, by new commissioners.