By the Court.—Freedman, J.
This action was brought to recover the total damage occasioned, to the premises Nos. 67 and 88.West Third street (also known as Amity street), and No. 2 South Fifth avenue (being the northwesterly corner of South Fifth avenue and Amity street), by the abridgment of the easement of light, air and access appurtenant to said premises in consequence of the construction, maintenance and operation of defendant’s railroad through West Third or Amity street, and in front of said premises.
The plaintiff proved title and possession of these three parcels of property in his father, John L. Ireland ; the death of his father in 1879 ; the devise of the three parcels to himself by his father’s will; and occupation by himself, through his tenants, since his father’s death. He also proved an assignment from himself, as executor of *455 liis father’s will, to E. Ellery Anderson, and an assignment from E. Ellery Anderson to himself, the plaintiff, of any claim which his father’s estate might have for the said damages, or any part thereof. The buildings on the premises are three-story brick dwellings, and they were built before the railroad was commenced or authorized.
The construction of defendant’s railway was commenced in April, 1816. It was completed in April, 1818, and has been operated since June, 1818. Amity street was opened under the act of 1813.
In such a case an abutting owner, as such, though he owns no part of the street, has an easement in the street to the extent of light and air, and free access to, and egress from, his premises, and any abridgment of such easement by the construction, maintenance or use of an elevated railway, in a manner inconsistent with the ordinary uses of a street, although pursuant to public consent, constitutes, if damage is occasioned thereby, a taking of private property within the meaning of the constitution, and entitles the owner to compensation (Story v. N. Y. Elevated R. R. Co., 90 N. Y. 122 ; Taylor v. Metropolitan Elevated Ry. Co., 50 Super. Ct. 311).
Such compensation may be ascertained and determined on application of the company, in proceedings instituted for the condemnation of so much of the abutting owner’s interest as has been taken, or is to be taken. The proceedings finally result in a transfer of the title of the property condemned upon payment or deposit of the sum awarded therefor, and such transfer of title, when completed, is conclusive upon subsequent grantees of the abutting owner, and all persons subsequently deriving any title or interest from or through him. If the company neglects to commence such proceedings, the abutting owners may elect how to proceed. He may invoke the powers of a court of equity, and have the construction or the operation of the railway enjoined, from and after such lapse of time as under all the circumstances is found to be a reasonable one for the company to make compensation, *456 and the compensation may be determined by the judgment, as in Henderson v. N. Y. C. & H. R. R. R. Co. (78 N. Y. 423), or left by the judgment to be determined subsequently, either by agreement, or by proceedings of condemnation, as in Story v. N. Y. Elevated R. R. Co. (90 N. Y. 122), and Glover v. Manhattan R. Co. (51 Super. Ct. 1).
It may also be deemed to have been well settled that, so long as no compensation has been had for the permanent injury, an abutting owner may bring successive actions at law for the loss, from time to time, of rent caused by the abridgment of the easement, as in the case of a continuing nuisance. In these cases there is no transfer of title, and the payment of one judgment is no bar to a subsequent action for a different period. From this, it follows that successive owners of the same premises, or even tenants under certain circumstances, may maintain actions for the injury to their respective interests.
The right of an abutting owner to maintain an action at law to recover the total damage • to his fee upon the theory that the injury is a permanent one, is not so firmly established, although such recoveries have taken place. The difficulty in such a case arises from the following considerations, viz.: In the case of personal property wrongfully taken, the true owner may elect not to pursue his property, but to hold the wrongdoer for the full value thereof. In such a case, the title becomes vested in the wrongdoer upon payment. But land cannot be taken like personal property. There may be wrongful use and occupation, trespass and continued trespass, but there can be no conversion in the sense in which personal property may be converted. The moment the wrongful use or occupation, or the trespass ceases, the owner has his land as before. No title to land can be acquired by wrongful use and occupation or trespass. A deed is necessary to pass the title. The consequence is, that in an action at law against an elevated railway company, to recover *457 the total damage to the market value of the fee, the company may insist that upon payment of such damage it is entitled to a proper conveyance so as to be protected against the claims of subsequent owners of the premises. But the difficulty may be overcome by the offer of the plaintiff to make such a conveyance. If, therefore, the complaint charges a taking of a permanent character, of property within the constitutional provision, and the answer, substantially admitting the taking and the permanent character thereof, creates an issue as to the-liability of the company to make compensation, an offer by the plaintiff at the trial to deliver a proper conveyance is sufficient, and the action may then be treated as one on the case. In the case at bar all this has substantially been clone, and consequently the right of the plaintiff to maintain the action as one for the total damage to the three parcels of property must be sustained, if otherwise made out.
The verdict rendered by the jury in favor of the plaintiff, presents, however, important questions as to the measure of damages. The verdict assesses the total damage to each of the three properties, and in addition, under the charge of the court authorizing the jury to do so, which was duly excepted to, allows compensation for loss of rents, viz.: ,
Rentals of No. 2 South Fifth Ave. . $3,600
“ “ “ 67 West Third street . 2,700
. 2,250
Damages on property No. 2 South Fifth Ave. '
“ 67 West Third St. 2,500
“ 88 “ “ “ . 2,500
Total verdict, $13,550
I do not see how this can be sustained, even if it be assumed that the plaintiff showed such a union of rights in his person as to entitle himself to a recovery of the total damage.
*458 In the case of the actual taking of land for the use of a railroad company, the measure of damages is a fair and full compensation for what was taken. In such a case the owner was always held entitled to the value of the land taken, estimated in view of the purposes for which it was intended to be used, and, where the land taken constituted part of a larger parcel, he was also held entitled to damages for the consequential diminution in the value of the residue of his property, restricted within certain limits (Henderson v. N. Y. C. & H. R. R. R. Co., 78 N. Y. 423; Matter of N. Y. C. & H. R. R. R. Co., 6 Hun, 149).
In the case of the abridgment by an elevated railway company of the easement which an abutting owner has in a street opened under the Act of 1813, which abridgment injuriously affects the property to which the easement is attached, the abridgment constitutes a taking of private property only to the extent that the erection and maintenance of the structure and the operation of the road are inconsistent with, and consequently in excess of, the ordinary uses for which the street was set apart, and the company is liable only to the extent of such taking (Taylor v. Metropolitan Elevated R. Co., 50 Super. Ct. 311).
In determining, once for all time, the value of what was thus taken, it must be borne in mind that no increased liability exists on the part of the company in consequence of its failure to institute proceedings of condemnation. This has also been in effect determined by this court in the case of Taylor already referred to. The question, therefore, in every such case is, what is the total value of that which was taken ? Such value the abutting owner has a right to have determined as of a particular time, as for instance the time of the taking. From such-time the owner, as a general rule, is also entitled to interest on the value so determined. So long, therefore, as the jury in a given case received proper instructions upon this point, and the question was duly considered in the assessment *459 of the amount, it can make no difference whether their verdict in form assesses the value as of the time of the original taking, and then awards interest thereon, or whether it is for a corresponding gross sum, including both principal and interest. But, beyond all that, the complaining owner cannot recover for specific items of damage alleged to have been sustained during certain limited periods of time, because all such items must be deemed to be covered by the award of total damage for all time. So I have been unable to find in our jurisprudence any principle upon which such owner can recover his total damage, and, in addition, loss of rents in the place of interest. The theory of the action, as I have repeatedly shown, always is, and always must be, to recover compensation for property taken. If such property were personal property, the measure of damages would undoubtedly be the value of the property taken at the time of the taking, with interest from such time. This was discussed in the case of Taylor v. The Metropolitan Elevated Bailway Co., supra, and a bare reference to what was there said, is all that is necessary here. Why a different rule should be applied to the taking of an easement, and a fluctuating measure preferred to a constant one, I cannot conceive. The mere fact that the easement has been taken in part only, and that a common law action to recover the permanent depreciation of the fee value of certain premises caused by such partial taking of the easement appurtenant thereto, is to a large extent a novelty, does not warrant such a wide departure from settled principles as would be involved in the promulgation of the rule that in such an action a recovery may be had for loss of rents in lieu of interest, and in connection with a recovery of the permanent damage. True, a recovery for loss of rent pure and simple in one action, is no bar to a subsequent action for a permanent taking. But in such a case, which can only arise in consequence of the continued neglect of the railway company to institute proceedings for. condemnation, the company would still *460 have the right to insist that the recovery in the first action for loss of rent should, in the subsequent action, take the place of interest for the period of time for which the recovery was had, or should otherwise be duly considered in the assessment of the total permanent damage.
In the case at bar the verdict, upon its face, presents inconsistencies. The jury found that the fee value of premises No. 2 South Fifth Avenue was not depreciated at all, and yet $3,600 were awarded for loss of rents. As to premises No. 67 West Third street, the loss of rents was fixed at $2,700, and the damage to the fee value at only $2,500. As to premises No. 88 West Third street, the disproportion is not quite so great, but still large enough to show that the proper measure of damages was not observed.
The charge and the verdict in this case were, therefore, erroneous in the particulars mentioned, and cannot be sustained ; and as the case is one in which the court at general term cannot make the proper computation, because it does not appear how the jury arrived at their conclusions, there must be a new trial.
There are some other exceptions which it is well to consider in this connection, because the questions covered by them will again present themselves upon the new trial. They relate to the refusals of the learned judge who presided at the trial, to charge unqualifiedly several requests made by defendant’s counsel, the object of which was to have the jury instructed to the effect that, in estimating the damages, they could consider neither the noise made by the running of the trains, nor the gas and cinders emitted by the engines, nor the diminution of light and air, or any other effects produced by the running of the trains. In other words, the damages, if any, were sought to be restricted to such as had been caused solely and exclusively by the erection and maintenance of the structure of the road. The use of the road, it was claimed, did not entitle the plaintiff to any damages whatever, because the operation of the road upon the surface *461 of the street would not have entitled him to any, if the road had been built as a surface road pursuant to public consent.
It is true that the general term of the supreme court, in the case of Story, recently held, in substance, that, besides the depreciation in value directly caused by the structure of an elevated road, and the depreciation in value directly caused by the mere obstruction of the passage, and circulation of light and air occasioned by the running of the trains, an abutting owner is not entitled to claim compensation for injury to his property caused by noise,, smoke, ashes, dust, steam, gas or cinders, or even the vibration of the building, though they may all be occasioned by the operation of the road, because he could not claim such compensation from a surface road. And it is also true that, in the case of Peyser, the general term of the court of common pleas held, that noise caused by the passage of the trains on an elevated road, cannot be considered as an element of damage. But this court has already, after full consideration, laid down the rule to be that there may be an abridgment of the abutting owner’s easement by the running of locomotives and trains, and that a recovery for such abridgment may be had, provided it appears that the manner of the running, and the physical effects proceeding therefrom, constitute a use of the street in fact other than, or beyond, an ordinary and legitimate use of the street, and that this is a question of fact to be determined in each case upon all the circumstances surrounding it (Taylor v. Metropolitan Elevated Ry. Co., 50 Super. Ct. 311; Drucker v. Manhattan Ry. Co., 51 Ib. 429).
It has also been held that even a surface railroad; lawfully in existence and operation, may in fact be operated to an extent going so much beyond the ordinary and legitimate uses of the street, as to involve an abridgement of the ¿butting owner’s easement in the street, and to entitle him to a corresponding compensation (Green v. N. Y. C. & H. R. R. R. Co., 65 Bow. Pr. 154).
*462 After a full and careful examination of these points of difference existing bet ween this court and the other courts named, we feel constrained to say, that although we entertain the highest respect for the opinions delivered by the learned judges who differ with us to some extent, we have been unable to discover any reason why we should not adhere to our former rulings, for it must be constantly borne in mind that the principle underlying all the decisions in the surface road cases is merely that the construction and operation of a surface road pursuant to public consent, whether it be a horse or a steam railroad, in a public street of a city, is not, per se, a use of such a street inconsistent with the ordinary and legitimate uses of the street.
We are, therefore, bound to hold, that, inasmuch as there was in this case testimony giren which was properly received, and which justified the submission to the jury of the question whether the running of the locomotives and trains, as they were run, involved a use of the street other than the ordinary and legitimate use, the refusals of the learned trial judge to charge unqualifiedly as requested, did not constitute error. Whether the qualifications which were made, in all respects conformed to the rule as laid down in the cases of Taylor and Drucker, it is not necessary to determine at present, especially as no corrections were asked for at the time.
There are other questions in the case which we pass in silence, as their determination is not necessary at present.
For the error resulting in the allowance of loss of rents in addition to the total diminution of the fee value, the judgment and order appealed from must be reversed, and a new trial ordered, ‘with costs to the appellant to abide the event.
Sedgwick, Oh. J., and Truax, J., concurred.