SIDNEY B. ROBY, PLAINTIFF, v. THE NEW YORK CEN-
TRAL AND HUDSON RIVER RAILROAD COMPANY,
DEFENDANT.

*Eminent domain — lands condemned for railroad purposes — when they revert to the
owner of the fee — a surrender of their possession to the exclusive use of a private
individual — abandonment.*

In the years 1861 and 1868 Sidney B. Roby acquired title to certain lands in the
city of Rochester, which were bounded southerly by the Erie canal.  Previously
to 1835, the Tonawanda Railroad Company had acquired title for railroad pur-
poses to a strip of land twenty-five feet wide on the southerly end of these
premises, extending across their entire width and adjoining the canal lands, and
had for many years used the strip for railroad purposes

Subsequently the New York Central and Hudson River Railroad Company acquired
all the rights and assumed all the liabilities of the Tonawanda Railroad Com-
pany in and to this strip, and thereafter abandoned a depot which had been
maintained by the Tonawanda Railroad Company, about two hundred feet to
the east of and beyond the premises in question, and used the old tract as a
spur for freight.  This spur connected with the main line at a point about one
thousand feet west of the abandoned depot.  The New York Central and Hud-
son River Railroad Company in 1889 leased this strip in question to Arthur A
Yates for a coal yard by a lease which also covered so much of the old track
as laid east of Roby's property and land which had been occupied by the depot.
The lease to Yates also contained the following clause: "It is mutually under-
stood and agreed that the party of the first part reserves from this lease the
use and control of the said track and trestle for all the purposes of a railroad,
together with the strip of land twenty-five feet in width adjoining the Erie
canal acquired for the purposes of said railroad."

Prior to this lease to Yates the occupant of the Roby lot had enjoyed railroad
facilities with the New York Central and Hudson River Railroad Company by
means of the strip.  When, however, Yates went into possession of it he
raised considerably the grade of the trestle in order to build coal-bins under
it, and, practically, he housed in the strip, including the .part crossing the
lands of Roby, with appliances, and also with doors, so that there was no
further access thereto by the public, and devoted the leased property exclusively
to his own use.  Further railroad facilities were also refused to Roby by the
New York Central and Hudson River Railroad Company unless Yates would
consent thereto.

In an action brought by Roby to recover possession of the strip, upon the ground
that the railroad company had abandoned it, it was

*Held*, upon all the evidence, that, notwithstanding the reservation clause, the
company had surrendered the use and occupation of the premises to Yates for
the purpose of his private business and to the exclusion of the public.

That lands could be condemned for railroad purposes only in case they were needed directly or indirectly for public use.

That when acquired by a corporation the public, under proper restrictions, still had a right to use them.

That when the right of way was devoted to the exclusive use of a private individual it was no longer used for public purposes.

EXCEPTIONS of the defendant, the New York Central and Hudson River Railroad Company, directed to be heard in the first instance at General Term, taken upon a trial had at the Monroe Circuit before the court and a jury, at which the court directed a verdict that the plaintiff had an estate in fee in the premises described in the complaint, and was entitled to the possession of them.

The action was brought to obtain a judgment that the plaintiff was entitled to the possession of certain premises, and that the defendant remove its tracks therefrom and for damages.

It was alleged in the complaint that on the 1st day of April, 1861, James S. Wadsworth and wife conveyed to the plaintiff certain property in the city of Rochester, N. Y., known as lots 66 and 67, in subdivision of great lot No. 60, being fifty feet in width on Hill street, and running back an equal width to the Erie canal, a distance of about one hundred and thirty feet, excepting and reserving from the premises thus conveyed so much of the same as was used and occupied by the New York Central Railroad Company for the purposes of their road, and on the same day quit-claimed to the plaintiff all the right, title and interest of the said James S. Wadsworth to that part of lots Nos. 66 and 67, then used and occupied by the New York Central Railroad Company, which was excepted from the above-mentioned conveyance.

That on the 3d day of July, 1868, Silas D. Walbridge and wife conveyed to the plaintiff lots Nos. 64 and 65 of the subdivision of great lot No. 50, being each fifty feet front on Hill street, and extending back an equal width 120 feet to the Erie canal, subject to such rights as the New York Central Railroad Company legally had in the above-described premises.

That prior to July 13, 1835, proceedings were taken by the Tonawanda Railroad to acquire the right to lay its tracks across lots Nos. 64, 65, 66, 67, and in such proceedings the Tonawanda Railroad acquired the use of a strip of land twenty-five feet in width

across said premises for the purposes of a railroad, and took possession of the same, and for many years used the same for such purposes.

That subsequently the New York Central Railroad Company was formed, by a consolidation of the Tonawanda Railroad with other railroads, and acquired all the rights, and became as such subject to all the liabilities of the Tonawanda Railroad, and, subsequently, by a consolidation with the Hudson River Railroad Company, became the New York Central and Hudson River Railroad Company.

That the latter company had abandoned the use of the tracks laid across the plaintiff's premises, and had ceased to use said tracks for railroad purposes, and that the use of said tracks was not necessary for the purpose of said railroad, and were of no public use whatever, and for some time past had been used only and exclusively for private purposes.

The evidence tended to show that by an instrument of lease of April 27, 1889, the New York Central and Hudson River Railroad Company leased to Arthur G. Yates a certain piece of land in the city of Rochester, bounded westerly by the foot of the slope of the main tracks of the railway of the New York Central and Hudson River Railroad Company and the Erie canal; on the south by the Erie canal; on the east by Ford street, and northerly by Hill street, with certain. exceptions specified in the lease to be used for coalyard and trestle for the purpose of receiving and handling coal transported over the railroad of the party of the first part; the party of the first part, the railroad company, reserving from the lease the use and control of the said track and trestle for all the purposes of the railroad, together with a strip of land twenty-five feet in width adjoining the Erie canal acquired for the purpose of such railroad.

The evidence also tended to show that the plaintiff's coal office was on the corner of lot No. 67, and that his barn was on lots 65 and 66; that a new trestle work had been built much higher than the old one, and inclosed so that the plaintiff's property was entirely shut off, and it was impossible to get from the railroad tracks on to the plaintiff's property.

That prior to October, 1889, the plaintiff had had railroad facilities from his land, but since that time had been entirely shut off from it.

*William N. Cogswell & William F. Cogswell,* for the plaintiff.

*Albert H. Harris,* for the defendant.

LEWIS, J. :

The plaintiff is the owner of a piece of land in the city of Rochester, on the southerly side of Hill street, 200 feet in width, and extending an equal width southerly for the distance of about one hundred and thirty feet to the Erie canal. Before the plaintiff got title to the lot, and prior to the 13th day of July, 1835, the Tonawanda Railroad Company, a corporation duly incorporated under the laws of the State of New York, by proceedings duly taken, acquired the right to appropriate a strip across the southerly end of this lot, twenty-five feet in width, for the use and purposes of a railroad, and it took possession thereof, and for many years used the same for railroad purposes.

The defendant has acquired all the rights of the Tonawanda Company, subject to all its obligations and liabilities.

The eastern terminus of the Tonawanda Company was in the city of Rochester. Its line of road passed across the twenty-five-foot strip aforesaid and terminated some two hundred feet east of the easterly line of the plaintiff's land, at the westerly side of Ford street, where the company constructed and maintained its passenger depot.

After the road passed from the control of the Tonawanda Company the use of this depot was abandoned, and about one thousand feet of the easterly end of the tracks of the old road, including the portion thereof extending across the plaintiff's lot, was used as a spur of the main tracks of the defendant's road, and was connected therewith at a point about one thousand feet westerly of the eastern terminus of the old road. This spur was thereafter used by the defendant for the purposes of its freight traffic.

On the 27th day of April, 1889, the defendant executed and delivered to Arthur G. Yates, of Rochester, a written lease for the term of fifteen years of its right of way across the plaintiff's land, including its rights and interests in that portion of its road lying easterly of the plaintiff's property, which was formerly occupied for a depot.

The grade of the railroad tracks upon the property thus leased was thereupon changed by elevating the same so as to make room

thereunder for coal-bins, and the strip of land across the plaintiff's lot was covered by the lessee, Mr. Yates, with coal sheds and appliances for the transaction of his business as a coal dealer. He separated the strip of land across the plaintiff's premises from the remainder of the plaintiff's lot by constructing his buildings in such a manner that there were no means of access by the occupant of the plaintiff's lot to the right of way aforesaid, and thereby effectually excluded the plaintiff and the public from that portion of the defendant's road leased as aforesaid. Mr. Yates devoted the leased property exclusively to his own use for the purpose of a trestle and coal yard, etc., for the receiving and handling of his coal.

It is provided in the lease that the premises are let and are to be used by the tenant for the following purposes only: A coal yard and trestle for the purpose of receiving and handling coal over the railroad of the party of the first part. The lessor reserves the right to terminate the lease and the term granted at any time upon giving six months' notice in writing to the tenant of such intention, and the lease and term thereupon are to cease upon condition that the landlord pay to the lessee what the tenant may have expended in alterations and repairs not exceeding the sum of $10,000. The lessor agrees to furnish the ties and iron rails necessary for the use of the tenant's trestles, lay the tracks and keep them in repair; all other constructions and repairs are to be made and done by the tenant. The tenant covenants and agrees not to assign the lease or under-let the premises, and covenants and agrees that they shall be used only for the purposes of receiving and handling his coal over the railroad of the defendant.

The following clause is in the lease: " It is mutually understood and agreed that the party of the first part reserves from this lease the use and control of the said track and trestle for all the purposes of a railroad, together with the strip of land twenty-five (25) feet in width adjoining the Erie canal acquired for the purposes of said railroad."

The lease further provides for the extension and continuation of the term thereof by consent of the landlord. The tenant covenants to pay an annual rental of $1,000.

Prior to the giving of the lease to Mr. Yates the occupants of the plaintiff's lot had enjoyed railroad facilities with the defendant's road, including the part thereof leased to Yates. After the lease a

continuance of such facilities was refused by the defendant, unless the consent of Mr. Yates was first obtained.

At the close of the evidence each party requested the direction of a verdict in their behalf respectively. The plaintiff's motion was granted, and the defendant's exceptions were ordered to be heard at the General Term in the first instance.

Notwithstanding the reservation clause above quoted, the lease, to all intents and purposes, surrendered the use and occupation of the premises to Mr. Yates for the purposes of his private business and to the exclusion of the public. While the lease provides that the defendant shall own the ties and rails and keep them in repair, they are devoted to the exclusive use of the tenant's business. Access to the track upon the premises leased is controlled by the tenant. He has inclosed the track with buildings. There are doors to the buildings which, when closed, prevent access thereto.

Lands can be condemned for railroad purposes only when they are needed for the use of the public, either directly or indirectly. When thus acquired the public, under proper restrictions and regulations, have the right to their use. It is not necessary that the entire public should need to use the road; but the public must have a right to use it; and when the right of way is devoted exclusively to the use of a private individual and the public excluded therefrom, it ceases to be used for public purposes. It is not a valid objection to the condemnation of a strip of land by a railroad corporation that the proposed premises may serve private use, if, in addition to serving such use, it is also necessary for the successful and convenient operation of the main line of the railroad. A railroad company could not condemn land with the avowed purpose of leasing it after it is acquired, as this was leased. If, after acquiring lands for legitimate railroad purposes, it could be leased and thereby devoted to the exclusive private use of individuals, railroad corporations might become dangerous instrumentalities in the business affairs of the country.

The evidence presented the question of fact to the trial court, whether there had been an abandonment by the defendant for the purposes of a public railroad of that portion of its road leased to Yates, and the conclusion was inevitable that it had abandoned it

and that the plaintiff was entitled to the possession thereof as the owner in fee freed from the easement of the defendant therein. (*Mahon* v. *N. Y. C. and H. R. R. R. Co.*, 24 N. Y., 660; *Heard* v. *The City of Brooklyn*, 60 id., 242.)

The defendant's motion for a new trial should be denied and judgment ordered for the plaintiff upon the verdict.

DWIGHT, P. J., and MACOMBER, J., concurred.

Defendant's motion for a new trial denied, with costs, and judgment ordered for the plaintiff on the verdict.