HARRIET S. RUMSEY AND OTHERS, RESPONDENTS, *v.* THE NEW YORK AND NEW ENGLAND RAILROAD COMPANY, APPELLANT.

*Real property — damages to upland — review of measure of damages — proper method of appeal — res adjudicata — pending proceeding to condemn property — navigable waters — U. S. Const., art. 1, sec. 8, sub. 3; U. S. R. S., secs. 3964, 5264.*

In February, 1888, Harriet S. Rumsey and others brought an action against a railroad corporation to recover damages arising during the years from 1881 to 1888, and resulting, as alleged, from the construction of the defendant's railroad in the Hudson river, in front of their upland, thus intercepting access to the river. The plaintiffs recovered judgment in the action, which was affirmed in the Court of Appeals.

In 1891 the same persons commenced another action against the same defendant to recover damages alleged to have been sustained from the same obstruction during the years from 1888 to 1891. In this second action the plaintiffs again recovered judgment. On an appeal from this last-mentioned judgment the case

did not state that it contained all the evidence, or all the testimony as to damages; nor did it contain the charge of the judge to the jury, or any exceptions thereto.

*Held,* that the question whether the proper measure of damages was adopted could not be raised on such an appeal.

That a motion to dismiss the complaint upon the ground that the damages could and should have been recovered in the former action was properly denied.

That as the case did not show what measure of damages was adopted the court would not assume that the jury was not charged correctly in that respect.

That an exception to the denial of a motion for a new trial, where there was no appeal from the order denying it, presented no question for review upon an appeal from the judgment alone.

That it was competent to show by practical brick-makers the fair rental value of the premises from 1888 to 1891, although it appeared that when the railroad was constructed the premises were not then, and had not since been, used for brick-making purposes.

That as the law will not presume that a wrongful act will be repeated, a former action for damages for a nuisance cannot be a bar to a second action for its continuance.

That, since a proceeding to condemn property under the right of eminent domain is of no effect until concluded, it was not error to exclude evidence that such a proceeding had been initiated.

That the people of the State, as successors of the King of England, owned the soil under the waters of the Hudson river, below high-water mark, as far up as the tide ebbs and flows.

That the people of the State, in ratifying and adopting article 1, section 8, subdivision 3 of the Constitution of the United States, which gave to congress the power to regulate commerce, did not surrender any property rights, and only yielded thereby the power to regulate commerce and navigation upon the waters of the Hudson river.

That section 3964, Revised Statutes United States, establishing as post roads all the waters of the United States during the time the mail is carried thereon, had no bearing upon the question of the title to lands under water.

That section 5264 of the United States Revised Statutes was also inapplicable.

APPEAL by the defendant, the New York and New England Railroad Company, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Dutchess on the 23d day of October, 1891, upon a verdict for the plaintiffs for $12,000, after a trial at the Dutchess Circuit before the court and a jury; with notice of an intention to bring up for review upon the appeal an order, entered in said clerk's office on the 23d day of October, 1891, denying a motion to set aside the verdict.

HUN — VOL. LXIII        26

*Walter C. Anthony*, for the appellant.

*H. H. Hustis*, for the respondents.

DYKMAN, J. :

This is an action for the recovery of damages resulting from the construction of the railroad of the defendant in the Hudson river at Fishkill Landing in front of the upland of the plaintiffs, and thus intercepting their access to the river and depriving them of the beneficial enjoyment of their property.

The action was commenced on the 25th day of March, 1891, to recover the damages sustained between the 1st day of January, 1888, and the first day of January, 1891. The cause was tried at the circuit on the 7th day of October, 1891, and a verdict was rendered in favor of the plaintiffs for $12,000, and from the judgment entered upon that verdict, and from an order subsequently made at Special Term denying a motion to set aside the verdict, the defendant has appealed.

There was a former action by the same plaintiffs against the same defendant for the recovery of damages resulting from the same obstruction between January, 1881, and January, 1888. That action was tried before a judge without a jury, and judgment was rendered in favor of the plaintiffs for $10,500 besides the costs. That action has been to the Court of Appeals, where the right of the plaintiffs to recover damages against the defendant for the obstruction has been established. (*Rumsey* v. *N. Y. and N. E. R. R. Co.*, 25 N. E. Rep., 1080.) In the month of March, 1888, proceedings were instituted by the defendant for the condemnation of the lands occupied by the company in front of the uplands of these plaintiffs. There was one hearing before the judge, and nothing further has been done.

The evidence of those facts, however, was stricken out by the court upon the trial of this action as immaterial, and the defendant's counsel excepted.

In this action that former suit and proceeding were set up by the defendant as a bar. The defendant has printed such testimony and proceedings upon the trial as it deemed necessary to present three questions, which alone are urged upon this appeal.

*First.* Respecting the measure of damages.

*Second.* Respecting the effect of the former action and proceeding.

*Third.* Certain constitutional questions.

The first question so attempted to be raised cannot be determined because it is not presented by this appeal.

The case does not comprehend all the evidence, and it does not purport to contain all the testimony on the subject of damages. When the plaintiffs rested their case upon the trial the counsel for the defendant moved for a nonsuit on the ground that the plaintiffs had not shown any damages, or given any proper measure of damages for the jury to act upon. That motion was denied and the defendant excepted.

The motion to nonsuit was properly refused, because the plaintiffs had then introduced some proof of damages, and it was for the court to give the jury their measure.

At the close of the case, and before it was submitted to the jury, the defendant's counsel moved to dismiss the complaint upon the ground that the plaintiffs had prosecuted an action against the defendant, in which the damages sued for in this action could and should have been recovered, and consequently such former action is a bar to this. That motion was denied, and the defendant's counsel excepted. The jury rendered a verdict for the plaintiffs for $12,000.

The defendant's counsel moved for a new trial upon the minutes on the exceptions taken by him, and because the verdict was for excessive damages. The motion was denied, and the defendant's counsel excepted.

There is no order denying the motion for a new trial, and no appeal from such order.

The case does not contain the charge of the trial judge to the jury, or any exception to such charge; neither does it embrace any order denying the motion at Special Term to set aside the verdict. And so it is that it nowhere appears in the case what measure of damages was adopted by the court or jury, or that there was any objection or exception to any rule of damages prescribed. On the contrary, as it was the duty of the trial judge to give proper instructions to the jury upon all legal questions, and as the charge is not given, or any exceptions thereto, we must now assume that the proper directions were given to the jury upon the question of damages, and all other questions of law, and that the defendant acqui-

esced in the charge. No other legitimate inference can be drawn from the silence of the defendant, and its failure to manifest any objection or exception to the directions of the judge to the jury. (*Porter* v. *M. E. R. Co.*, 120 N. Y., 288.)

The exception to the denial of the motion for a new trial upon the minutes presents no question for review upon this appeal from the judgment, and, in the absence of an appeal from an order denying such motion, we can review only the questions of law raised by the exceptions taken upon the trial. (*Matthews* v. *Meyberg*, 63 N. Y., 656; *Dresser* v. *Boatmen's F. and M. Ins. Co.*, 47 Hun, 153.) We have already seen that the refusal to nonsuit was not erroneous.

The attorney for the plaintiffs testified to an effort he made with one Pratt to make some arrangement by which the plaintiffs could reach the water beyond the railroad so as to operate their brick-yard. The objection to that testimony was overruled, and the defendant excepted. The interview resulted in nothing, and so the exception presents no error.

Three practical brick-makers were called as witnesses for the plaintiffs, and each one was asked substantially what would be the fair rental value of the plaintiffs' property, and the question to two of them was confined to the rental value of the property from January, 1888, to January, 1891.

The counsel for the defendant objected to each of these questions as not tending to prove damages by any proper measure, as not calling for any proper measure of damages, and because it appeared affirmatively that when the defendant constructed its railway at the place complained of these premises were not used, have never been used since, and are not now in a condition to be used for brickmaking purposes.

Each of these objections were overruled, the defendant excepted to such rulings, and these seem to be the exceptions upon which the appellant relies to raise the question respecting the measure of damages.

The contention is erroneous and untenable. It ascribes to testimony the force of law.

It was essential to the plaintiffs' case to lay before the jury some proof of their loss and damage. They claimed that the wrongful act of the defendant had deprived them of the use of their property,

and it became necessary for them to prove the value of such use as
an element of their damage.   It was in line with their claim, and
legitimate evidence for the consideration of the jury, and, therefore,
admissible.   But it was not given to prescribe the measure of dam-
ages.   That was the province of the court, and could not be done by
the plaintiff.   It was a question of law to be determined by the
court, and, as we have seen, the presumption is, it was so fixed to
the satisfaction of both parties, and received the acquiescence of
both, and that constituted a waiver of the previous exception.
(*Lahr* v. *M. E. R. Co.*, 104 N. Y., 294.)

The evidence was received for the enlightenment, and not for the
control of the jury.

The property had been rendered useless by the destruction of
access to the river.   The Court of Appeals had decided that the
plaintiffs could maintain the action for damages, and what their dam-
age was and of what it consisted became the subject of proof upon
the trial.

What the law would permit them to recover as the measure of
their damage was quite another question to be determined by the
court, and not by the parties or the jury.

In every view, therefore, the evidence was legal and proper, but
in no view did it establish the damages or their size.

In relation to the legal effect of the former action and judgment,
it is settled in this State that the plaintiffs could not recover therein
upon the theory that the obstruction of which they complained would
be permanent, but simply for the damages sustained down to the time
of the commencement of the action.   (*Uline* v. *N. Y. C. and H. R.
R. R. Co.*, 101 N. Y., 98; *Mahon* v. *N. Y. C. R. R. Co.*, 24 id., 658;
*Pappenheim* v. *M. E. R. Co.*, 128 id., 436; *Galway* v. *M. E. R. Co.*,
id., 132.)

The underlying principle seems to be that the law will indulge
in no presumption of the continuance of a wrong in the future, or
that the unlawful act of to-day will be repeated on the morrow.

Another reason for limiting the recovery of damages to the time
of commencing the suit is that the plaintiff may in the same action
have judgment for the abatement of the nuisance.

The plaintiffs could not have recovered damages for the perma-
nent diminution of the value of their property, and in all similar

actions reported in this State the courts have only permitted recoveries for the damages sustained from time to time. Such was the doctrine laid down in respect to the damages sustained from the construction and operation of the elevated railroad in the case of *Tallman* v. *Metropolitan Elevated Railroad Company* (121 N. Y., 119).

In the celebrated case of *Story* v. *The Railroad Company* a resort to equity was permitted to obviate the necessity of prosecuting successive actions at law for the recovery of damages.

The proceeding instituted by the defendant for the condemnation of the property of the plaintiffs under the right of eminent domain constituted no bar to this action, and the testimony introduced upon that subject was properly expunged from the record.

Such proceedings could have no operation as a bar until they were carried to completion and the damages assessed. Their mere commencement had no efficacy without further prosecution. The defendant cannot avail itself of its own inaction to the prejudice of the plaintiffs.

The constitutional question presented is stated by the appellant as follows: "The United States government has the final and absolute control of these lands under the waters of a navigable stream open to the sea, and can appropriate them to any use for the promotion of interstate or foreign commerce. Congress has so appropriated them by making defendant's interstate railway a post road (U. S. R. S., § 3964), and by authorizing telegraph companies to use these lands. (U. S. R. S., § 5264.)

"The plaintiffs can acquire no rights in said lands which can conflict with the rights so given by congress. This action is based upon claims which do conflict with such rights."

No authority is furnished in support of this contention, and it is plainly antagonistic to well-recognized principles and doctrines.

Upon the Declaration of Independence in 1776, the people of the State of New York, as the successor of their former sovereign, were invested with all the prerogative rights of the king of England, and so became the owner of the soil under the waters of the Hudson river, below high-water mark, as far up as the tide ebbs and flows. (*Gould* v. *Hudson River R. R. Co*, 2 Selden, 522; *The People* v. *Tibbetts*, 19 N. Y., 528; *Lansing* v. *Smith*, 8 Cow., 146; 4 Wend., 9.)

The first Constitution adopted by the State in April, 1777, vested the supreme legislative power within the State in the senate and assembly, which together form the legislature. Thus the people established a government and invested it with sovereign power, and it became the State, representing the collected will of the people.

Hence it is sometimes said that the title to the soil under tidal waters is in the State, and at others that it is in the people, and both signify the same thing. But in strictness of speech the people are the ultimate owners.

Not only did the people thus become the owner of the soil under the water of the river, but they became vested with the absolute control over the river, and through the medium of the legislature might exercise all the power which could have been exerted by the king previous to the American Revolution. (*Lansing* v. *Smith, supra.*)

That power remained in the people until the 26th day of July, 1778, when they adopted and ratified the Constitution of the United States, which contained the following provision : " Congress shall have power   *   *   *   to regulate commerce with foreign nations and among the several States, and with the Indian tribes." (Const. of the U. S., art. 1, § 8, sub. 3.)

The power to regulate commerce extended to the regulation of navigation. (*Gibbons* v. *Ogden*, 9 Wheat., 189.) Thus the State yielded and granted to congress the power to regulate commerce and navigation upon the waters of the Hudson river, but it surrendered nothing more. It conferred no proprietary or property rights, and while the power granted is plenary as to the objects specified and implied, yet the grant contains, neither expressly nor by implication, any cession of territory or property. (1 Kent's Com., 439 ; *Corfield* v. *Coryell*, 4 Wash. Cir. Rep., 371.)

The power bestowed upon congress comprehends only the use of the water, and in no way diminishes the right of the State as the owner of the soil. It is a right to regulate, but grants no property interest and impairs no rights of the State, because the powers not delegated to the United States by the Constitution nor prohibited by it to the States are reserved to the States respectively or to the people. (Amendments to the Const., art. 10.)

So long as the State permits no impediment to the navigation of the river the rights of congress are not infringed and the constitu-

tional right to regulate commerce is not invaded. It is thus made manifest that congress has no control of the land under the waters of the Hudson river, and cannot appropriate them to any use, and that the constitutional objection of the defendant is not valid.

Section 3964 of the Revised Statutes of the United States, to which the defendant refers, has no influence upon the question under discussion. It merely establishes as post roads all the waters of the United States during the time the mail is carried thereon, all railroads, or parts of railroads, which are now, or hereafter may be, in operation, also the canals and plank-roads and some other roads under circumstances.

Section 5264, to which reference is also made, has no application and requires no attention.

This extended examination seemed to be required by the case and leads us to the conclusion that the judgment and order should be affirmed, with costs.

PRATT, J., concurred; BARNARD, P. J., not sitting.

Judgment and order denying new trial affirmed, with costs.