(17 Misc. Rep. 244)

CRAVER v. JERMAIN et al.

(Supreme Court, Trial Term, Rensselaer County.  May, 1896.)

INFANTS' REAL ESTATE—MORTGAGES—TRUSTS.
    A devise of the use and income of land to testator's executors in trust for the benefit of his grandchildren, and to provide an annuity for his widow, with a provision that after the death of the widow the land shall go to the grandchildren, gives the grandchildren an interest in the land separate from the trust estate (1 Rev St. p. 729, § 60); and therefore the court may authorize such interest to be mortgaged, as provided by Code Civ. Proc. § 2348, notwithstanding the provision of 1 Rev. St. p. 730, § 63, that a person beneficially interested in a trust for the receipt of rents and profits of land shall not assign or dispose of such interest.

Action by Elizabeth S. Craver against James B. Jermain and others.  Complaint dismissed.

J. A. Cipperly, for plaintiff.

McClellan & Albertson and William J. Roche, for defendant James B. Jermain.

Chester G. Wager, for defendant Chester B. Craver.

Frederick A. Chew, guardian ad litem, for defendant Annie Campbell and others.

S. Birdsall and Robley D. Cook, for defendant Melvin B. Sharpe.

CHESTER, J.   This is an action in which the plaintiff seeks to procure relief from a certain bond and mortgage for $3,000, held by the defendant James B. Jermain, dated December 31, 1886, so far as the same is an incumbrance upon what is known as the "Jacob Sharpe Farm," or upon the surplus moneys arising from the sale thereof under a prior mortgage.   The defendant Chester B. Craver has interposed an answer, seeking substantially the same relief, with reference to this mortgage, as that asked for by the plaintiff.   Flora Cheney, formerly Flora Lape, since deceased, and the defendant Annie Campbell, by her guardian ad litem, each put in an answer, alleging that the mortgage is also void as against the farm known as the "Andrew Barringer Farm."   It is charged that this mortgage

was procured by fraud, or was made as it is by the mutual mistake of the parties. At the close of the testimony I held that there was no evidence to submit to the jury on the question of fraud, and that only questions of law were presented for determination. It appears that Bernhard U. Sharpe died on the 22d day of November, 1882, seised and possessed of four farms in the town of North Greenbush, Rensselaer county, one known as the "Conrad Sharpe Farm," one known as the "Home" or "Harris Farm," one known as the "Jacob Sharpe Farm," and one known as the "Andrew Barringer Farm." At the time of his death there was a mortgage for $10,000 upon said home or Harris farm and said Jacob Sharpe farm, and a mortgage for $4,000 upon said Conrad Sharpe farm, and the said Andrew Barringer farm was free of any mortgage incumbrance. Bernhard U. Sharpe left a will, dated February 14, 1882, which was admitted to probate by the surrogate of Rensselaer county December 2, 1882, and letters testamentary thereon were issued to George N. Sharpe and William S. Betts, two of the executors and trustees named therein. By this will the testator devised and bequeathed his property as follows: First. To his wife, Mary F. Sharpe, so long as she remained his widow, an annuity of $400 each year after his death, together with certain rights and privileges upon his said home or Harris farm, which annuity, rights, and privileges were thereby made a charge, lien, and incumbrance upon all of the testator's real estate above mentioned, and also a personal charge upon the several devisees thereof. This provision for the wife was made in lieu of dower and of all claims which she might otherwise have against the estate of the testator. Second. To his executors, all of his personal estate, in trust to pay his funeral expenses, build a monument, pay expenses of administration, and the residue thereof to be applied towards the payment of the debts and bonds and mortgages owing by him at the time of his death. Third. To his son George N. Sharpe and his grandsons Melvin B. Sharpe and William Sharpe said Conrad Sharpe farm and said home or Harris farm, subject to the foregoing provisions, and subject to so much of his mortgage indebtedness of $14,000 as shall not be paid from his personal property as aforesaid. The said George N. Sharpe, during his lifetime to have the control, management, and use of said two farms, subject to the provisions aforesaid, for the purpose of enabling him to meet and pay the aforesaid yearly legacy to testator's wife, and the interest on such unpaid mortgage indebtedness as aforesaid, and the taxes and repairs on said two farms. Fourth. The use, occupancy, income, and avails of said Jacob Sharpe farm to his daughter Elizabeth Craver (plaintiff herein) and to his grandson Chester B. Craver during their lives, and to the survivor during his or her life, subject to the payment by them each year after testator's decease of $100 to his executors, to be paid by them to his wife so long as she remains his widow, on account of her annuity, and subject also to the payment of $100 each year to George N. Sharpe, and in case of his death to Melvin B. and William Sharpe, to be applied by them on

said mortgage indebtedness.    Fifth. Subject to the foregoing provisions he devised said Jacob Sharpe farm, from and after the death of said Elizabeth and Chester, to the children and issue of said Chester, if any shall survive him, subject to the payment by said children and issue of $2,000 to said George N., Melvin B., and William Sharpe, to be applied to the payment of said mortgage indebtedness as against said Jacob Sharpe farm, which $2,000 was made a lien and charge thereon.    But in case said Chester shall die without any children or issue surviving him, said farm is devised to said George N., Melvin B., and William Sharpe.    The said Elizabeth Craver, during her life, subject to the payments aforesaid, to have the control and management of said Jacob Sharpe farm, and of the use and income thereof, to enable her to make such payments amounting to $200 each year, and to pay the taxes and necessary repairs. Sixth. The use, income, and avails of said Andrew Barringer farm to his executors, in trust to manage, let, or rent the same as they may think best, collect and receive the rents, income, and avails thereof, and to pay therefrom the taxes, insurance, and necessary repairs, and then to pay to his great grandchildren Flora Lape, Jasper Campbell, and Annie Campbell, each year after his decease until they shall all have arrived at the age of 21 years, to said Flora $50, and to Jasper and Annie $25 each, towards their schooling, clothing, and support, and after payment thereof to pay from such income, rents, and avails the sum of $100 towards said $400 annuity to his wife each year so long as she remained his widow, and the further sum of $100 each year during the life of his wife and of his granddaughter Eveline and until said Flora, Jasper, and Annie shall all have arrived at the age of 21 years, towards the payment of said mortgage indebtedness, and the interest thereon, and the residue of such income and avails, if any, to be paid one-half to said Flora and the other one-half to said Eveline, Jasper, and Annie equally.    Seventh. From and after the death of his said wife and said granddaughter Eveline he devised said Andrew Barringer farm to said Flora Lape, Jasper Campbell, and Annie Campbell, their heirs and assigns forever, subject to the payment by them of $2,000 to said George N., Melvin B., and William Sharpe in payment of said mortgage indebtedness as against said Andrew Barringer farm or against the devisees thereof, the payment of which $2,000 was made a lien and charge thereon.    In case said Flora, Jasper, and Annie shall all die before arriving at the age of 21 years without leaving any issue surviving them or either of them, then and in that case, from and after the marriage or death of said wife and death of said grandchild Eveline, said Andrew Barringer farm is devised to said son George N. and grandsons Melvin B. and William Sharpe.    Some time before the death of the testator, Jasper Campbell, a beneficiary mentioned in the will, died, when about five years of age, and the provision for his benefit lapsed.    In December, 1886, three separate proceedings to mortgage infants' real estate were instituted, the purpose being to raise money to buy off the widow's annuity, which,

by the will, was made a personal charge upon the devisees, and also a lien upon the lands sought to be mortgaged. One of these proceedings was instituted by Chester B. Craver, then an infant over 14 years of age, in which his mother, the plaintiff, Elizabeth Craver, joined, to mortgage the Jacob Sharpe farm for $750; another was instituted on behalf of William A. Sharpe, then an infant under 14 years of age, by his father, George N. Sharpe, to mortgage the Conrad Sharpe farm and the home or Harris farm for $750; and the third was instituted by the general guardian of Flora Lape, then an infant over 14 years of age, in which she joined, and by the father of Annie Campbell on her behalf, she then being an infant under 14 years of age, to mortgage the Andrew Barringer farm for $750. Each of these proceedings was conducted to a termination.

The final order made in the proceeding instituted on behalf of said Chester B. Craver directed his special guardian to unite with the special guardians of the infants interested in the other similar proceedings above mentioned in making and delivering a mortgage on the four farms devised by said will, as aforesaid, to said infants and to said Melvin B. Sharpe for the sum of $3,000; that is to say, for Flora Lape and Annie Campbell, $750; for Chester B. Craver, $750; for William A. Sharpe, $750; and for Melvin B. Sharpe, $750. The mortgage was to be given to James B. Jermain, and was to be collateral to the bond of Melvin B. Sharpe, George N. Sharpe, and Elizabeth S. Craver. The order also provided that neither of said infants nor their property shall be liable for said loan beyond the sum borrowed for each, and directed the special guardians and Melvin B. Sharpe to apply the $3,000 to the extinguishment of the claim of the widow of the testator upon the farms mortgaged, and securing her release. A similar order was made in the proceeding instituted on behalf of the infant William A. Sharpe, and also in the proceeding on behalf of the infants Flora Lape and Annie Campbell. Pursuant to these orders, William A. Sharpe, an infant, by John S. Myers, his special guardian, Chester B. Craver, an infant, by Melvin B. Sharpe, his special guardian, Flora Lape and Annie Campbell, infants, by Myron Albert Lape, their special guardian, together with Melvin B. Sharpe and wife, Elizabeth S. Craver, and George N. Sharpe, united in the mortgage, under date of December 31, 1886, to James B. Jermain, for $3,000, describing all four of the farms devised in the will as hereinbefore stated. The mortgage contained the following recital with reference to the above-mentioned proceedings to mortgage, viz.:

"Whereas, the aforesaid infants heretofore petitioned severally to the supreme court that special guardians be appointed for them respectively, and that said special guardians be authorized to mortgage the real estate of such infants, and such proceedings were afterwards had that upon the coming in of the report of the referee such special guardians were authorized to contract for the loan for such infants, and they having reported on oath that they had contracted for the same,' said court, by an order dated December the thirty-first, one thousand eight hundred and eighty-six, directed and empowered said special guardians to unite with the aforesaid adult mortgagors in a mortgage upon the four farms hereinafter described."

The mortgage was given as collateral to a bond made concurrent with the mortgage, and bearing the same date, executed by George N. Sharpe, Elizabeth S. Craver, and Melvin B. Sharpe to James B. Jermain, in the penal sum of $6,000, conditioned to pay $3,000 in five years from date, with interest semiannually. Nothing was said in the mortgage itself limiting the amount of the incumbrance upon each of the farms to $750, and the bond contained no provision limiting the liability of the individual obligors to $750. The $3,000 received from the defendant Jermain upon this bond and mortgage was paid December 31, 1886, to Mary F. Sharpe, the widow of the testator, and in consideration thereof she on that day executed a release to George N. Sharpe, Elizabeth S. Craver, Melvin B. Sharpe, Flora Lape, Annie Campbell, Chester B. Craver, and William A. Sharpe, and discharged them and each of them, and all of the real estate devised by the will of Bernhard U. Sharpe, deceased, to them, or any of them, from any and all claims due or to become due to her, arising from the provisions of said will in her favor as the widow of the testator. The lien of $2,000 created by the fifth item of the will on the Jacob Sharpe farm was reduced to $314.18, and the annual payment of $100 on the mortgage indebtedness required by the fourth item of the will was reduced to $15.71 by the payment and application of the proceeds of the sale of a portion of the Jacob Sharpe farm upon the mortgage indebtedness thereon, which portion Bernhard U. Sharpe had contracted to convey in his lifetime. The mortgage for $10,000 and the one for $4,000, hereinbefore mentioned, were each assigned to the defendant James B. Jermain, April 9, 1886. Prior to that time the principal of the $10,000 mortgage had been reduced by the payment of $1,000 thereon by the executors of Bernhard U. Sharpe, and on June 18, 1886, said executors further reduced said mortgage by the payment to Mr. Jermain of the sum of $3,595.34, the residue of testator's personal property remaining after paying debts and expenses of administration, as ascertained upon the judicial settlement of their accounts; nine-thirteenths of which residue, or $2,489.08, being applied on the $10,000, and four-thirteenths thereof, or $1,106.26, upon the $4,000 mortgage. Each of said two last-mentioned mortgages has been foreclosed in actions brought by Mr. Jermain. Upon the sale pursuant to the judgment of foreclosure of the $4,000 mortgage the farm known as the "Conrad Sharpe Farm" was bid in by and conveyed to Mr. Jermain, May 8, 1893. Upon the sale, pursuant to the judgment of foreclosure of the $10,000 mortgage, the home or Harris farm and the Jacob Sharpe farm were bid in by and conveyed to Mr. Jermain on September 20, 1893. Pursuant to the last-mentioned judgment the home or Harris farm was sold first, and the Jacob Sharpe farm last. There was a surplus on the sale in this order, after paying the mortgage indebtedness, costs, and expenses, of $2,870.99, arising wholly from the proceeds of the sale of the Jacob Sharpe farm, which surplus has been paid to the county treasurer of Rensselaer county pursuant to the directions of the judgment in the

last-mentioned action, and to the credit of said action. The de-fendant Jermain is still the owner of the $3,000 mortgage above mentioned, and the whole amount of the principal thereof and the interest thereon from March 31, 1888, remain unpaid. This is the mortgage that is the subject of attack by the plaintiff and the answering defendants other than Mr. Jermain. The mortgage now affects only the surplus moneys arising from the sale of the Jacob Sharpe farm, in which the plaintiff and her son the defendant Chester B. Craver are interested, and the Andrew Barringer farm, in which Annie Campbell (now Lawton) and the heirs of Flora (Lape) Cheney, now deceased, are interested, as the lien of the mortgage, if any, upon said Jacob Sharpe farm, upon the home or Harris farm, and upon the Conrad Sharpe farm has been extinguished by the fore-closure of the prior mortgages thereon, as above stated. There has been no claim but that all the steps required by the statutes in relation to the mortgaging of infants' real estate were regularly taken prior to making the mortgage in question. The claims are made, however, that the mortgage was obtained by fraud; that it was made contrary to the provisions of the will by which the property was devised to the infants; that, as to the Andrew Barringer farm, the will creates an express trust in the executors, and vests the entire estate in the executors as trustees, subject to the execution of the trust, and that the persons beneficially interested had no estate or interest which they could mortgage or dispose of, or which the court could authorize them to mortgage or dispose of, and that as to the Jacob Sharpe farm the proceedings to mortgage were based upon the mistaken assumption that the infant Chester B. Craver owned the fee instead of a life estate. For these reasons the mortgage is claimed to be void. Some other reasons are also urged against its validity, which, according to the view I take of the case, it is unnecessary to consider.

The allegation that the mortgage was obtained by fraud was not proven, and I, therefore, refused to submit that question to the jury. Nor is there any evidence in the case that would justify a holding in support of the contention that the court was imposed upon in making the orders authorizing the infants or their special guardians to unite in the mortgage. There may have been, in the testimony taken before the referee in the proceedings to mortgage, some misstatement of the interests which some of these infants had in the premises mortgaged, but the will was in evidence before the referee, and was before the court when the orders to mortgage were made, and we have no right to assume that any erroneous statements by witnesses of the interests of the children under the will had greater weight with the court than the will itself. Nor do I think it of much importance to the decision of this case what their interests were. The essential fact was that they had some interest. It is sufficient now to say that the court, upon the evidence and the referee's report, determined that it was for the interests of the infants to make the mortgage in question to raise money for the purpose of buying off the

widow's annuity. This conclusion seems to be amply justified. The infant devisees were not only personally charged with the payment of a portion of the annuity, but it was made a lien upon the premises devised to them. They took the land devised charged with this burden and subject to this personal charge. By paying off this annuity with the moneys received under the mortgage, the infants and their lands were relieved of this burden, and the amount they were required to pay annually was substantially reduced, the interest on the mortgage being considerably less than the annual payments required by the will to meet the annuity. The defendant Jermain parted with his money and took this mortgage in good faith. The moneys have been applied to the payment of the annuity, and that has been released both as against the land and the devisees. The mortgage should not, therefore, be held to be void unless the law plainly requires it. The Code of Civil Procedure, in the title relating to the disposition of the real property of infants, provides in section 2348 that "real property, or a term, estate or other interest in real property belonging to an infant, * * * may be * * * mortgaged" as prescribed in that title. Under this provision the court had the power to authorize the mortgaging of the real property, estate, or other interest in real property belonging to these infants, and a mortgage so authorized would cover whatever interest the infants had, whether that interest or estate was one in possession or was a vested future estate. Jenkins v. Fahey, 73 N. Y. 355. It is claimed, however, that as to the Andrew Barringer farm the infants had no estate or interest that could be mortgaged, because the entire estate was vested in the executors as trustees; and that the mortgage is void as being contrary to the provisions of the Revised Statutes relating to uses and trusts. 1 Rev. St. p. 730, §§ 63, 65. It is true that the will in the sixth item hereinbefore referred to creates a trust in the executors for the benefit of the testator's granddaughter Eveline and certain of his great-grandchildren, and to provide for the payment of a portion of the annuity to his wife, and of a portion of his mortgage indebtedness. In creating the trust the testator simply devises and bequeaths the use, income, and avails of the Andrew Barringer farm to his executors in trust. There is no devise of the fee to them. It is true, also, that the statute above mentioned (1 Rev. St. p. 729, § 60) provides that "every express trust, valid as such in its creation, * * * shall vest the whole estate in the trustees, in law and in equity, subject only to the execution of the trust." But this language means that the whole trust estate, and nothing else, is vested in the trustees. It does not refer to an interest in the land not embraced in the trust. Stevenson v. Lesley, 70 N. Y. 512. And the temporary estate vested in the trustee does not interfere with or prevent the vesting of remainders or future estates entirely outside of and separate from the trust estate. Embury v. Sheldon, 68 N. Y. 227; In re Tienken, 131 N. Y. 391, 30 N. E. 109; Losey v. Stanley, 147 N. Y. 560, 42 N. E. 8. Nor does the provision in the statute (section 60) that "the persons for whose benefit

the trust is created shall take no estate or interest in the lands" prevent the testator from devising to such persons such interests in his lands outside or in addition to the beneficial interests under the trust as he chooses.   That appears to be what was done in this case, for in the seventh item of his will the testator devised to these infants an interest which was entirely separate and distinct from that which they were entitled to as beneficiaries under the trust.   This, in my opinion,.is an interest which the court could authorize to be mortgaged notwithstanding the provision of the statute (1 Rev. St. p. 730, § 63), which prohibits a person beneficially interested in a trust for the receipt of the rents and profits of lands from assigning or disposing of such interest.

With reference to the Jacob Sharpe farm, I think it of little moment, in determining the question of the validity of the mortgage, whether Chester B. Craver had an estate for life or was seised in fee. His interest in the farm, whatever it was, if I am correct in my conclusions, was covered by the mortgage, the same as was the interest of his mother, the plaintiff; and it was not necessary to state in the mortgage the interest which he had.   The mortgage contained no covenant as to title, and it attached to such interest only as he had in the mortgaged premises.   It is suggested that because, under the will, Elizabeth Craver was given the control and management of the Jacob Sharpe farm during her life, her son Chester B. had no interest which the court could authorize to be mortgaged.   But it seems to me, for the reasons hereinbefore stated with reference to substantially the same question relating to the trust concerning the Andrew Barringer farm, there is no force in the suggestion.   Without attempting an argument upon the phraseology of this will, or a further recital of the facts with reference to the beneficiaries, or the possible beneficiaries, under it, I will say that it appears to me evident from the following authorities that the interest which Chester B. had in the Jacob Sharpe farm, as well as the interest which Flora Lape and Annie Campbell had in the Andrew Barringer farm, vested in them immediately upon the death of the testator, and that these were interests which the court could authorize to be mortgaged notwithstanding these interests might possibly be defeated by the happening of a subsequent event.   1 Rev. St. p. 723, § 13; In re Seaman's Estate, 147 N. Y. 69, 41 N. E. 401; Nelson v. Russell, 135 N. Y. 137, 31 N. E. 1008; Jenkins v. Fahey, 73 N. Y. 355; Embury v. Sheldon, 68 N. Y. 227; Livingston v. Greene, 52 N. Y. 118; Code Civ. Proc. § 2348.   Nor do I think the mortgage is in contravention of the general scheme of the will.   There is nothing in the will which prohibits selling or mortgaging the farms devised to the infants.   The court determined that under the situation these infants found themselves in with reference to the premises devised to them it was for their interests that the mortgage should be made, and the moneys applied to the discharge of the annuity charged upon them.   It seems to me the proceedings to mortgage were in aid of the scheme of the will, and that in no sense did they run

counter to the statutory prohibition against mortgaging infants' real estate contrary to the provisions of a will. For these reasons I think the mortgage is not void.

It is also insisted here that if the mortgage is held to be valid, then it should be reformed so as to show that neither the said infants nor their property shall be liable for more than $750 of the principal thereof, which was the amount borrowed for each, but I do not think it is required that the mortgage should be reformed to produce that result. The infants or their guardians were directed by the order authorizing the mortgage to "unite" with the adults in giving a mortgage. It was a single mortgage that was authorized on the four farms. The mortgage itself refers to and recites in detail the proceedings which resulted in the authority of the court to make the mortgage. The proceedings to mortgage being referred to in it, they may fairly be regarded as a part of it. The proceedings including the final order were filed and entered in the county clerk's office, and therefore became a part of the record the same as was the mortgage. The proceedings and the mortgage should, therefore, be read and construed together, as if constituting a single instrument. Tolman v. Railroad Co., 92 N. Y. 353, 356. While there was nothing in the mortgage itself, or in the bond which accompanied it, limiting the liability of any of the parties to either of them, yet the proceedings show that $750 of the $3,000 was to be borrowed in each of the four proceedings, and the order to mortgage showed that $750 thereof was for Flora Lape and Annie Campbell, $750 for Chester B. Craver, $750 for William A. Sharpe, and $750 for Melvin B. Sharpe; and then such order further provided "that neither said infants nor their property shall be liable for said loan beyond such sums so as aforesaid borrowed for each." I think that full force and effect should be given to this provision in each of the orders to mortgage, the same as if it had in express terms been so written in the bond and mortgage themselves. The defendant Jermain does not contest this proposition. But, while effect should be given to this limitation so far as the infants and their property are concerned, it does not and should not change the liability of the adults under the bond signed by them.

In coming to the conclusion which I have in this case I have not deemed it necessary or proper to attempt to determine the present interests or rights of the respective parties in the Andrew Barringer farm, or in the Jacob Sharpe farm, or in the surplus moneys arising from the sale thereof. Nor have I deemed it proper to attempt a judicial construction of the will of Bernhard U. Sharpe, except so far as it is necessary to determine that the infants had some estate devised to them thereunder which the court could authorize them to mortgage for their benefit. The present trustee under that will is not a party to this action, and is not, therefore, here asking for a judicial construction of the will to guide him in the execution of his trust. Flora Cheney, formerly Flora Lape, who was a party to this action, and interested in the Andrew Barringer

farm, has died since the commencement of the action, leaving two surviving children, who have not been brought in as parties. The case is not, therefore, in a condition where the court can properly determine the respective rights and interests of the parties so far as the Andrew Barringer farm is concerned. All those questions can be determined when Mr. Jermain or the holder of the $3,000 mortgage should begin foreclosure of the same as against that farm; and the question as to who have and what are the rights and interests of the parties in the Jacob Sharpe farm can be determined when a claim is made under that mortgage to the surplus moneys arising from the sale of that farm. I think, upon the whole case, that the plaintiff's complaint should be dismissed, with costs to the defendant Jermain against the plaintiff, and that the judgment should provide that neither the Andrew Barringer farm nor the surplus moneys arising from the sale of the Jacob Sharpe farm, so far as the infant mortgagors are concerned, is liable under the mortgage in question for more than $750 of the principal thereof.

Ordered accordingly.