GARRETT E. BACORN et al., as Trustees, et al., Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim No. 27959.)

Court of Claims, April 12, 1949.

*Harry Moseson* and *Norman J. French* for claimants.

*Nathaniel L. Goldstein, Attorney-General (James G. Austin* of counsel)', for defendant.

LAMBIASE, J. Claimants allege that at all times in their claim mentioned they were the owners of a parcel of land in the city of Elmira, Chemung County, New York, in said claim more particularly described, upon which there were situate the following buildings and structures: a three-story frame and brick house known as No. 529 West Water Street which had six apartments; a two and one-half story frame house known as No. 529½ West Water Street, containing two apartments, located in the rear of the house at No. 529; a six-stall glazed tile garage located south of the frame house; and a one-car frame garage, all of which were rented except the last-mentioned garage. The premises are bounded on the south by the Chemung River and on the north by West Water Street upon which they front about forty feet.

A stream known as Hoffman Brook or Creek, running generally southerly, cuts through the property on its westerly side about opposite the large garage, and some of claimants' property on its extreme southerly end lies in the bed of said creek and south of it. A right of way averaging about ten feet in

width located for part of its length on property immediately to the west of claimants' property affords ingress and egress for claimants' property and particularly for that part thereof on which the garages are situated.

Pursuant to chapter 862 of the Laws of 1936 and acts amendatory thereof, there was adopted a flood plan to prevent flooding by the Chemung River. In connection with said plan the State appropriated for the purposes of a perpetual easement, among other parcels, a portion of claimants' premises, on part of which portion thus appropriated there were at the time thereof the afore-mentioned six-car and one-car garages, the notice of appropriation and map containing, however, a reservation in the following language: "Reserving to the owners, but at their own risk, the right and privilege of using their property providing the exercise of such right and privilege does not interfere with or prevent the user and rights herein described."

This claim was filed to recover the value of the land and of the garages appropriated, and the amount of the consequential damages alleged to have resulted to the remainder of the land by reason thereof; and its filing was authorized by the provisions of chapter 909 of the Laws of 1945.

The appropriation involves an area of 0.446+ acres and involves the demolition and removal of the six-stall garage and of the one-car garage. The parcel appropriated for the easement is to be put to the use of carrying an earthen levee embankment which will cross the property from the northeast to the southwest, the purpose of which, when erected, will be to prevent flood and high waters. Upon its completion this levee will have an eight-foot top or berm with a so-called batter slope 1 foot on 2½ feet, and the slope on claimants' property will measure on its north side twenty-one feet from the toe to the top thereof. It will be covered with topsoil and seeded. From the porch on the rear of 529½ West Water Street to the northerly line of the appropriation there is an average distance of fifty-six feet, and from the center of the west wall of the six-stall garage to the concrete cribbing on the east bank of Hoffman Brook or Creek, the distance is forty-nine feet plus.

Any award herein must reflect the reasonable market value, as of the time of the appropriation, of the six-car and of the one-car garages, and of the land actually appropriated; and in addition thereto, the damages, if any, resulting to the remainder of the property because of the appropriation. (*Matter of Bd. of Water Supply of City of N. Y.*, 277 N. Y. 452; *County of Erie*

v. *Fridenberg,* 221 N. Y. 389; *Town of Fallsburgh* v. *Silverman,* 260 App. Div. 532, affd. 286 N. Y. 594; *South Buffalo Ry. Co.* v. *Kirkover,* 176 N. Y. 301; *Matter of City of N. Y.* [*Fourth Ave.*], 255 N. Y. 25, motion for reargument denied 255 N. Y. 602, certiorari denied 283 U. S. 860, motion to amend remittitur granted 256 N. Y. 643; *Henderson* v. *New York Central R. R. Co.,* 78 N. Y. 423; *Matter of City of N. Y.* [*Rockaway Beach*], 288 N. Y. 75; *Matter of City of Rochester* [*Smith St. Bridge*], 234 App. Div. 583.) In determining the market value, all of those elements which would be in the mind of a prospective buyer and of a prospective seller must be considered. (*Sparkill Realty Corp.* v. *State of New York,* 254 App. Div. 78, 84, affd. 279 N. Y. 656.)

The market value of the 0.446+ acres of land and of the garages actually appropriated and the resulting damages to the remainder by reason of said appropriation have been variously stated by expert witnesses called by the respective parties herein. As is usual in cases of this character, these witnesses differ widely in their testimony. We do not deem it necessary to discuss the substance of this expert testimony. Suffice it to say that from it and from a consideration of all the evidence before us, we have concluded that the reasonable market value of the land actually appropriated, that is the 0.446+ acres, as of the time of the appropriation, was $1,300, and that of the six-car garage and of the one-car garage $3,100 and $100 respectively.

In conformity with the rule of damages to which we have hereinbefore alluded and which must be applied in cases of this kind, we now consider the matter of consequential damages. The testimony of the experts on this phase of the case ranges from the sum of $1,300, testified to by a witness for the State, to $4,800 testified to by one of claimants' witnesses. In support of their position it is contended by the claimants that they will be unable after the appropriation to build any more than a two-car garage on the land remaining between the house known as No. 529½ West Water Street and the north line of the appropriated area, which will result in a consequential loss of revenue from the diminution of the garage space available for rental purposes; that prior to the appropriation tenants of the garages were able to turn around their vehicles wholly on claimants' premises preparatory to making an exit therefrom, and that as a result of the appropriation, the turning-around area has been to a great extent eliminated, and that consequently, the

construction of more than a two-car garage would necessitate their going on to the lands of others bordering claimants' lands to the west to turn around; that it will be more difficult to rent the apartments with the lesser number of garages; and that the property as a whole will be less valuable with such lessened garage space and facilities.

In their ascertainment we must determine what damages, if any, have resulted to the remainder of the property because of the severance therefrom of the part actually appropriated. We must also determine whether or not any damage has resulted to the remainder of the property because of the use to which the portion taken is to be put by the State. Furthermore, on this question of consequential damages we must consider also any benefit accruing to the lands and buildings not appropriated because of the use to which the appropriated parcel is to be put by the State with the limitation, however, that the amount of such benefit, if any, may be set off only against the amount allowed for consequential damages to the remainder, and that in no case should an award be made for less than the value of the property actually taken by the condemnation. (*Matter of City of N. Y.*, 190 N. Y. 350, 360; *Northern New York Power Corp.* v. *State of New York*, 183 Misc. 306, 326, affd. 265 App. Div. 908, affd. 293 N. Y. 756; *Matter of City of N. Y.* [*Exterior St.*], 285 N. Y. 455, remittitur amended 286 N. Y. 675, see, also, 293 N. Y. 1; *Newman* v. *Metropolitan Elevated Ry. Co.*, 118 N. Y. 618; *Bohm* v. *Metropolitan Elevated Ry. Co.*, 129 N. Y. 576.)

It is the position of the claimants that no benefit will result to their lands from the appropriation; that they have protected their property from floods with the result that it had not been flooded except upon the occasion of a couple of unusual floods. The State, on the other hand, asserts that the project of flood control along claimants' property and in its vicinity will result in protection for the remaining parcel.

We are of the opinion that benefits will accrue to the remaining portion of claimants' property by reason of the flood control plan and because of the erection of the levee, since the danger of floods without the plan and without the levee is ever present notwithstanding what flood protection measures claimants have taken with reference to their property; and that fact of flood danger would certainly be considered by a prospective purchaser. We have, therefore, considered the value of the benefit thus accruing to claimants' property in arriving at the net amount of the consequential damages herein. (*Brewer-Titchener Corp.* v. *State of New York*, Claim No. 27823.)

We pass now to a consideration of the reservation contained in the notice of appropriation to which we have hereinbefore referred. The nature and extent of the rights acquired by the State under the easement will determine the value, if any, of this reservation. What rights has the State acquired under the appropriation herein?

The easement imposed by the appropriation is not one for a definite period. On the contrary, it is perpetual. The rights acquired by the State thereunder are permanent in nature, and because of their very nature, the possibilities of their abandonment by the State because of nonuser are so remote and improbable as not to be taken into consideration. The State has the unquestioned right to occupy the whole of the land upon which the easement is imposed for the purposes thereof, and to exclude the claimants therefrom entirely at any time that the exigencies of the situation may demand the same. The easement, therefore, we conclude, is so large as to preclude from a practical point of view the ordinary use by the claimants herein of the property upon which it is imposed, and leaves to them, as to the appropriated lands, only the name of owners. (*Matter of Water Comrs. of Amsterdam,* 96 N. Y. 351, 361.) This is a too uncertain basis upon which to hold that such a reservation has anything but a nominal value.

We have, therefore, concluded, after a consideration of all the elements of damages and after having viewed the premises, that the award herein should be: (a) $1,300 for the land actually appropriated; (b) $3,100 for the six-car garage and $100 for the one-car frame garage, both actually appropriated; and (c) $2,500 for net consequential damages, in all the sum of $7,000, from which amount there must be subtracted the sum of $1 herein found to be the value of the reservation for the benefit of the owners, making the net award herein the sum of $6,999, which amount we are awarding in an accompanying decision.

Ordinarily there would be no necessity to further continue our discussion. However, in our consideration of this claim, we have found a question of title which must be resolved in order to determine from whom the easement rights are being appropriated and to whom the award is to be made, for " In eminent domain the rule is established beyond room for discussion that he from whom the title of the condemned property is taken is entitled to the compensation. The time of the acquisition of title by the condemnor is the time at which the right to

compensation and its amount accrued and the then grantor *in invitum* [*sic*] is the owner of and the party entitled to be paid the compensation." (*Matter of Van Etten* v. *City of New York,* 226 N. Y. 483, 489.)

Claimants allege in their claim that they " were at the time of the appropriation, the sole owners in fee of the premises appropriated ", and have submitted a proposed finding to that effect. Their title is based upon a deed the pertinent parts of which read as follows: " This Indenture, Made the 9th day of February, Nineteen hundred and eighteen Between Ira D. Vanderpool and Elizabeth Vanderpool, husband and wife, of the City of Elmira Chemung County, New York, parties of the first part, and Garrett E. Bacorn and Clara A. Bacorn, as trustees for the benefit of the heirs of Garrett E. Bacorn and Clara A. Bacorn, surviving at the death of the survivor of said trustees, said trustees to have full charge of the property and as compensation for said services shall receive such part or all of the income during their joint and several lives as they may charge for their services out of said income and profits to the full extent of said income if they so desire, parties of the second part;

" Together with the Appurtenances and all the estate and rights of the parties of the first part, in and to said premises.

" To Have and to Hold the premises herein granted unto the parties of the second part their heirs and assigns forever." We are to construe this deed and to determine therefrom if claimants are thereby constituted the *sole* owners in fee of the premises therein described, although for the purposes of convenience herein we have hereinbefore referred to the appropriated property as being the property of the claimants.

We think that the deed herein contains a declaration of a valid express trust of real property since it is in writing (Real Property Law, § 242), has all the essential elements required to constitute such a trust, viz., a trustee, an estate devised to him, and a beneficiary (*Greene* v. *Greene,* 125 N. Y. 506), and is authorized by subdivision 3 of section 96 of the Real Property Law which now reads, and at all times herein mentioned read, as follows: " § 96. *Purposes for which express trusts may be created.* An express trust may be created for one or more of the following purposes: * * * 3. To receive the rents and profits of real property, and apply them to the use of any person, during the life of that person, or for any shorter term, subject to the provisions of law relating thereto ". While the

language of the deed does not in direct words follow the language of the above statute, it does indicate, we believe, an intention on the part of the grantor that the two trustees therein named are to receive the rents and profits of the real property and apply them to their own use during their respective lives. " Presumptions may be indulged in and prima facie precepts of construction may be resorted to but they yield to the clear intent of the settlor of the trust as evidenced by its provisions taken as a whole." (*Glanckopf* v. *Guaranty Trust Co.,* 274 App. Div. 39, 41.) In the last analysis, the question presented is one of intention, and this intention, if discoverable and lawful, shall prevail and be effectuated. (*Greene* v. *Greene, supra,* p. 509; *Matter of Healy,* 255 App. Div. 361, 365; *Matter of Pulis,* 220 N. Y. 196, 202.)

The trust which we are considering is not invalid while both trustees are alive even though they are at the same time trustees and *cestuis.* True, it is, that the time may come when unless both trustees die at the same instant the survivor of them will become solely entitled to both possession and income thus raising new questions relative to the validity of the trust, since every valid trust must have a trustee who is not the sole beneficiary thereof. (*Matter of Reed* v. *Browne,* 295 N. Y. 184.) With the happening of such a contingency we are not presently concerned, however, for at the time of the appropriation and upon the trial of this claim, both trustees were alive.

An express trust, valid in its creation, being found to exist, the legal estate, for the purposes of the trust, now is and at the time of the appropriation was vested in the trustees as provided for by section 100 of the Real Property Law, and by section 210 of the Civil Practice Act it is provided that " Every action must be prosecuted in the name of the real party in interest, except that * * * a trustee of an express trust * * * may sue without joining with him the person for whose benefit the action is prosecuted." (*Matter of Straut,* 126 N. Y. 201; *Havana City Ry. Co.* v. *Ceballos,* 49 App. Div. 263; *Conley* v. *Walton,* 49 Misc. 1.)

The deed, however, in addition to the legal estate in the trustees which we have discussed, in our opinion, creates a legal estate in remainder in the " heirs of Garrett E. Bacorn and Clara A. Bacorn, surviving at the death of the survivor of said trustees ". (Real Property Law, § 101.) This construction of the deed, we feel, also carries out the intention of the grantor. The trustees have no power over the estate in remainder except

such as may be given to them by the deed. They cannot by their own acts alter or affect the interests of the remaindermen. Furthermore, the provision of section 100 of the Real Property Law declaring that every valid express trust shall vest the whole estate in the trustee, is, by settled construction, limited to the trust estate, and has no application to future legal estates in lands covered by the trust, to take effect in possession on the termination of the trust. (*Losey* v. *Stanley,* 147 N. Y. 560; see, also, *Matter of Easterly,* 202 N. Y. 466, motion for reargument denied 204 N. Y. 586; *Knowlton* v. *Atkins,* 134 N. Y. 313; *Craver* v. *Jermain,* 17 Misc. 244.) Interested, therefore, in this award are not only the income beneficiaries of the trust estate, that is the claimants, Garrett E. Bacorn and Clara A. Bacorn, who are represented herein in their capacity as trustees of said trust, but also the remaindermen whose estate is independent of the trust.

However, who will constitute this class described in the deed as " heirs of Garrett E. Bacorn and Clara A. Bacorn, surviving at the death of the survivor of said trustees," which class we have construed as being remaindermen, cannot now and could not as of the time of the appropriation be ascertained, since Garrett E. Bacorn and Clara A. Bacorn were alive at the time of the appropriation and at the time of the trial and presumably are now alive. Such heirs cannot be determined and ascertained until the death of Garrett E. Bacorn and Clara A. Bacorn. In view of the foregoing, we do not regard it essential to our purposes to determine whether the interests of the claimants herein other than the claimants Garrett E. Bacorn and Clara A. Bacorn, as trustees, etc., created under the estate in remainder in the deed, now are and at the time of the appropriation were in their nature contingent or vested (Real Property Law, § 40), or whether, assuming such interests to be vested, they are subject to being divested or changed. (*Losey* v. *Stanley,* 147 N. Y. 560, *supra*; *Matter of Easterly,* 202 N. Y. 466, motion for reargument denied 204 N. Y. 586, *supra*; *Moore* v. *Littel,* 41 N. Y. 66.) In short, under the circumstances herein, we do not deem it pertinent to or within the necessary scope of our inquiry for us to determine just what the nature, quantity, extent and legal effect of the future estate is that has been created in the remaindermen, for we are satisfied that whatever the estate created in said " heirs " as remaindermen, who will constitute the " heirs " cannot be ascertained until the death of Garrett E. Bacorn and Clara A. Bacorn. (*Gilliam* v. *Guaranty Trust Co.,* 186 N. Y. 127, 133.)

All the presumptive heirs of Garrett E. Bacorn and Clara A. Bacorn disclosed by the record — that is, all those who would have been heirs had Garret E. Bacorn and Clara A. Bacorn died as of the date of the appropriation — have been joined as claimants herein and are before the court; but what about their potential heirs — that is, others who might become heirs between the date of the appropriation and the date of death of Garrett E. Bacorn and Clara A. Bacorn? Under the circumstances herein are these potential heirs represented in this litigation so that they will be bound by our decision herein? We believe that they are represented, and that they will be bound by our decision.

The presumptive heirs and the potential heirs of Garrett E. Bacorn and Clara A. Bacorn have a common interest to protect herein. There are no issues involved herein as among themselves, since the dispute is with the State of New York. In such a case, it is safe to permit the presumptive heirs to represent the potential heirs, and the latter must be bound by our judgment herein, for protecting their own interests, the presumptive heirs will be protecting those of the potential heirs. Their interests are identical. Under the circumstances, therefore, the interests of the potential heirs are sufficiently cared for, being represented by the presumptive heirs. (*Kent* v. *Church of St. Michael,* 136 N. Y. 10; *Tonnele* v. *Wetmore,* 195 N. Y. 436, 445, 446; *O'Leary* v. *Grant,* 155 Misc. 98; *Downey* v. *Seib,* 185 N. Y. 427; *Mead* v. *Mitchell,* 17 N. Y. 210; *New York Life Ins. & Trust Co.* v. *Conkling,* 159 App. Div. 337.) Furthermore, vesting of the easement rights in the State of New York has not worked any change herein except as to form. The award, under the circumstances herein, takes the place of the land interests appropriated, and the fund thus created becomes a substitute for them (*Utter* v. *Richmond,* 112 N. Y. 610; *Muldoon* v. *Mid-Bronx Holding Corp.,* 287 N. Y. 227; *Matter of City of N. Y.* [*Cropsey Ave.*], 268 N. Y. 183; *Matter of City of N. Y.* [*Jamaica Bay*], 252 App. Div. 103), becomes part of the trust estate for its purposes, and is preserved according to the provisions thereof to the extent necessary to satisfy such interests as they arise. (*Kent* v. *Church of St. Michael, supra*; *Monarque* v. *Monarque,* 80 N. Y. 320, 326.)

Upon the record herein there appears to be no basis for and we cannot make an award to the claimants as the sole owners in fee of the appropriated property. Accordingly, the Comptroller of the State of New York is hereby directed to deposit the amount which we are in an accompanying decision awarding

as compensation for the easement rights appropriated herein to the account of such award in any bank in which moneys belonging to the fund from which such compensation is payable may be deposited, to be paid and distributed to the persons entitled to the same as ordered by the Supreme Court on application of any person interested in such award, in accordance with the provisions of section 22 of the Court of Claims Act (L. 1939, ch. 860).